# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00473-SCT

*LEO WALES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2009 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/29/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Leo Wales was tried in absentia for two counts of armed robbery and two counts of aggravated assault. The jury found Wales guilty on all counts, and the Circuit Court of Hinds County, First Judicial District, sentenced Wales for Count I, aggravated assault, to twenty years in the custody of the Mississippi Department of Corrections, to run concurrently with all counts; for Count II, armed robbery, to forty years, to run concurrently with all counts; for Count III, aggravated assault, to twenty years, to run consecutively to Count IV and

concurrently with Counts I and II; and for Count IV, armed robbery, to forty years, to run consecutively to Count III and concurrently with Counts I and II. Also, the trial court sentenced Wales to an additional five years on each of the four counts, to run consecutively to all counts, pursuant to the firearm enhancement of Mississippi Code Section 97-37-37(1).[1] Wales's consecutive and concurrent sentences require him to serve a total of eighty years.

¶2. Wales, now incarcerated, appeals. He argues that (1) the trial court erred in trying him in absentia; (2) the evidence was insufficient to support his conviction in Count I, aggravated assault or, alternatively, the verdict of guilty in Count I was against the overwhelming weight of the evidence; and (3) the trial court erred by denying his proffered jury instruction on the specific intent required for armed robbery. This Court affirms Wales's conviction and sentence, because substantial evidence supported the trial court's finding that Wales had waived his right to be present at trial, because the evidence was sufficient to support the verdict of guilty in Count I, and that verdict was not against the overwhelming weight of the evidence, and because the jury instructions, taken as a whole, fully and fairly informed the jury of each element of the crime of armed robbery.

---

[1] Mississippi Code Section 97-37-37(1) states:

> Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

Miss. Code Ann. § 97-37-37(1) (Supp. 2011).

## FACTS

¶3.   Tarsha Robinson lived at the Four Seasons Apartments in Jackson, Mississippi. On March 7, 2009, Tarsha was caring for the children of her best friend, Tawanda Owens. That evening, Owens and Tarsha's brother, Michael, drove to Jackson from the Mississippi Delta to pick up Owens's children from Tarsha's residence. Michael drove his Jaguar; Owens was in the passenger seat. They parked in front of Tarsha's building at the Four Seasons Apartments at about 9:30 p.m. Michael noticed two men, one slim and one heavy, walk from behind Tarsha's building and toward his car. The men wore black hooded sweatshirts. The slim man, later identified as Neil Jackson, approached the passenger's side. The heavy man, later identified as the defendant, Leo Wales, approached the driver's side.

¶4.   Jackson held a gun up to Owens's window and stated "This is a motherfucking stickup. Get your hands up." Wales opened Michael's door, put a gun to Michael's head, and said "don't make any false moves." Jackson opened the passenger-side door and began rummaging in Owens's purse. Wales told Michael to empty his pockets. Michael testified that he gave Wales $600 from his pocket. Owens testified that Jackson took her purse. Wales stepped back from the car to look at the money. Then, Jackson stated, "this is not all – that's not all you got." Michael offered to give the robbers the car, and he begged for his and Owens's lives. Jackson threatened to "blow [Michael's] brains out." Then, Jackson leaned into the passenger side of the car, across Owens, and slapped Michael's head with his gun. Michael grabbed Jackson's wrist, and Jackson fired one shot. Michael managed to wrestle the gun away from Jackson.

¶5.   At that point, Wales fired into the car though the driver's side window, striking

3

Michael's nose. Wales fired another shot that struck Michael's neck. Wales moved to the front of the car and continued firing into the windshield. The bullets struck Michael in the chin, neck, elbow and twice in the arm. In all, he was shot seven times. Despite his wounds, Michael exited the car and fired two shots at the robbers, who ran away. As Wales fled, he fired one shot that struck the Jaguar. A neighbor saw Wales and Jackson drive away in a white and gray Pontiac. Owens picked up her purse, which Jackson had dropped, ran to Tarsha's apartment, and notified her of the shooting. Tarsha drove Michael to the hospital, where he underwent surgery for his wounds.

¶6. The police arrived, canvassed the neighboring areas, and discovered a Pontiac matching the description given by the neighbor parked outside a nearby residence. When officers converged on the residence, they observed two black males who met the robbers' description in the front yard. The men fled, but were apprehended. When Jackson was arrested, a search of his person revealed $80 and two spent shell casings. A sweaty size 5XL black hoodie was found in Wales's room. A Taurus .40 caliber semiautomatic gun was found inside a freezer that was located off Wales's room.

¶7. At the trial, Michael identified Wales from a mugshot as the man who had shot him. The police discovered seven shell casings and one live round outside Tarsha's apartment building. These shell casings were matched to the .40 caliber semiautomatic gun found inside Wales's freezer. Police also recovered a .38 revolver with four shells and two shell casings from the front passenger seat of the Jaguar. They recovered multiple jacket fragments and projectiles from inside the Jaguar.

¶8. The jury found Wales guilty of the armed robbery and aggravated assault of Michael,

4

and of the armed robbery and aggravated assault of Owens.

## DISCUSSION

I. WHETHER THE TRIAL COURT ERRED BY CONDUCTING THE TRIAL IN WALES'S ABSENCE.

¶9. Wales was indicted on July 30, 2009. His trial date initially was set for November 9, 2009, and later adjusted to Monday, November 16, 2009. Wales was released from jail on bond, and he failed to appear for trial on November 16, 2009. His attorney notified the trial court that he had communicated the trial date and time to Wales on two occasions in the previous week. Defense counsel also checked the courthouse for Wales and called the home where Wales lived with his grandmother, to no avail. Wales's grandmother told defense counsel that, the night before the trial, she had helped Wales iron his clothes for trial, after which Wales had left the house. He told his grandmother that he was going to spend the night elsewhere, but he planned on being in court the next day. His grandmother did not know his present whereabouts. The trial court continued the trial until the next day so that Wales could be located.

¶10. The proceedings resumed two days later, on November 18, 2009. Because Wales still had not been located, the prosecutor informed the trial court about the efforts that had been made to find him. The last known contact Wales had made with anyone was with his grandmother on the night before the trial date. Law enforcement agencies in Hinds, Madison, and Rankin Counties and the United States Marshall Service had been involved in the search for Wales. An investigator at the district attorney's office had contacted all the local hospitals, but no one by the name of Leo Wales had been admitted. Also, the

5

prosecutor had contacted the local jails, but Wales had not been confined in any of them. Wales's attorney stated that he had informed Wales of the trial date on three or four occasions, and he had no doubt that Wales had known when the case was set for trial.

¶11. Applying Mississippi Code Section 99-17-9, the trial court found that Wales had waived his right to be present at the trial and ordered the trial to proceed in his absence. *See* Miss. Code Ann. § 99-17-9 (Rev. 2007). Defense counsel objected to Wales being tried in absentia and requested a continuance. Wales's counsel argued that Wales would be prejudiced by a trial in absentia, because he would be unable to testify in his own defense. The trial court found that Wales's intent to avoid trial had been demonstrated by substantial evidence, and the court observed that Wales's counsel had had two days in which to adjust the defense strategy. The trial court overruled the objection and denied the motion for a continuance.

¶12. On appeal, Wales argues that the trial court's decision to try him in absentia was prejudicial and violated his constitutional right to be present at his trial. A defendant's right to be present in the courtroom at every stage of his trial is guaranteed by the Sixth Amendment to the United States Constitution. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058, 25 L. Ed. 2d 353, 356 (1970). The Mississippi Constitution also guarantees the right to be present at trial. Miss. Const. art. 3 § 26. However, this constitutional right is not absolute, and it is subject to waiver. *Bostic v. State*, 531 So. 2d 1210, 1213 (Miss. 1988). "A waiver of a constitutional right is ordinarily valid only if there is 'an intentional relinquishment of a known right or privilege.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938)). In *Taylor v. United States*, 414

6

U.S. 17, 20, 94 S. Ct. 194, 196, 38 L. Ed. 2d 174 (1973), the United States Supreme Court held that the defendant's right of presence at trial may be waived by his voluntary absence.

¶13.	Mississippi Code Section 99-17-9 codifies our state law regarding trial in absentia. Prior to July 1, 2005, the statute stated:

> In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, *in cases less than felony*, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (emphasis added).  In **Sandoval v. State**, 631 So. 2d 159, 164 (Miss. 1994), this Court recognized that the statute "expresses the legislative intent to limit waiver of trial presence of accused felons to those instances where the accused is 'in custody and consenting thereto.'"  However, the Court also recognized the longstanding rule that an accused, present at the commencement of trial, could thereafter waive his further appearance by voluntarily absenting himself from the trial.  **Id.** (citing **Samuels v. State**, 567 So. 2d 843 (Miss. 1990) (overruled by **Sandoval**, 631 So. 2d at 164).  In **Simmons v. State**, 746 So. 2d 302, 306 (Miss. 1999), the Court recognized that, after **Sandoval**, the Court consistently reversed and remanded cases where a felony defendant had been tried in absentia.  *See* **Jackson v. State**, 689 So. 2d 760 (Miss. 1997); **Villaverde v. State**, 673 So. 2d 745 (Miss. 1996); **Banos v. State**, 632 So. 2d 1305 (Miss. 1994).

¶14.	The **Sandoval** rule was modified in **Jefferson v. State**, 807 So. 2d 1222, 1227 (Miss. 2002).  The facts of **Jefferson** bear substantial similarity to those of the instant case.  When

7

Jefferson failed to appear for his trial date, his attorney informed the court that he had made all reasonable efforts to assure Jefferson's presence at trial. *Id.* at 1223. Jefferson had been present on the date of arraignment and at the omnibus hearing. *Id.* His attorney had communicated the trial date by letter seven days before the trial date, and had confirmed it in a telephone conversation with Jefferson six days before the trial date. *Id.* But on the trial date, Jefferson's attorney could not locate him. *Id.* The case was continued for two days, but Jefferson still could not be found. *Id.* The trial court ruled that Jefferson had waived his right to be present at trial. *Id.* at 1224. He was tried and convicted in absentia. *Id.* At a post-trial hearing on Jefferson's motion for a new trial, a friend of Jefferson's testified that, before trial, Jefferson had told him he was "going to run." *Id.*

¶15. On review, this Court noted that its recent trend under Section 99-17-9 was to disallow felony trials in absentia. *Id.* at 1224. We also recognized the development of another trend, that of criminal defendants who voluntarily absent themselves from trials in order to avoid prosecution. *Id.* at 1226. Due to that trend, the Court "carve[d] out an exception [to *Sandoval*] based on willful, voluntary and deliberate actions by a defendant in avoiding trial, such as those presented here." *Id.* at 1227. The Court held that Jefferson had voluntarily absented himself from trial and had waived his right to be present at trial because he clearly had been aware of the date of his trial, he had been granted two continuances, and he had expressed a clear intention to avoid trial. *Id.* The Court also found Jefferson had suffered no prejudice from his willful absence. *Id.* Finally, the Court recognized that the United States Constitution does not forbid the trial in absentia of a defendant who has not been present at any point during the trial, although Federal Rule of Criminal Procedure 43

does not permit trial in such a case. *Id.*

¶16.    The law changed when Section 99-17-9 was amended effective July 1, 2005, to allow the trial in absentia of a defendant in default for nonappearance on felony charges, in the trial court's discretion:

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (Rev. 2007).  In *Jay v. State*, 25 So. 3d 257, 263-64 (Miss. 2009), this Court recognized that, with the 2005 amendment, the Legislature "effectively overruled" *Sandoval* as it related to trial in absentia of a felony offender.  *Jay* also recognized the continued viability of the *Jefferson* rule that a defendant who has committed willful, voluntary, and deliberate actions to avoid trial has waived the right to be present at trial and may be tried in absentia.  *Id.* at 264.

¶17.    The 2005 amendment to Section 99-17-9 placed the decision to try a felony defendant in absentia within the discretion of the trial court.  But this discretion necessarily must be limited by the fact that a felony defendant has a constitutional right to be present at trial. U.S. Const. amend. VI; Miss. Const. art 3, §26.  This right is subject to waiver if there is "an intentional relinquishment of a known right or privilege."  *Bostic*, 531 So. 2d at 1213 (quoting *Johnson*, 304 U.S. at 464).  In *Jefferson*, this Court held that a defendant's willful, voluntary, and deliberate actions in avoiding trial constituted a waiver.  *Jefferson*, 807 So. 2d at 1227.  Section 99-17-9 and *Jefferson* hold that the trial court's finding of waiver is

9

subject to appellate review for abuse of discretion. Miss. Code Ann. § 99-17-9; *Jefferson*, 807 So. 2d at 1224.

¶18.   We hold that the trial court did not abuse its discretion in finding that Wales voluntarily had absented himself from the trial. As in *Jefferson*, there was absolutely no doubt that Wales knew his trial date. The previous week, Wales had assisted in his defense by consulting with his attorney in anticipation of trial. The night before trial, according to Wales's grandmother, Wales had left his house and had said he was spending the night elsewhere. Wales did not appear at the courthouse, and the extensive efforts to locate him over a two-day period by the prosecution, the defense, and law enforcement were fruitless. In sum, Wales knew the trial date, did not appear, and could not be located. Wales argues that no direct evidence was before the trial court that his absence was voluntary. Nonetheless, substantial circumstantial evidence was before the trial court demonstrating Wales's intent to avoid trial. Therefore, the trial court's finding was not an abuse of discretion. A review of the record shows that Wales received a fair trial and suffered no prejudice from his willful absence. Although Wales, had he been present, may have decided to testify in his own defense, his deliberate absence from his trial operated as a waiver of that right. This Court affirms the trial court's decision to try Wales in absentia.

> II.   WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT WALES'S CONVICTION OF COUNT I, THE AGGRAVATED ASSAULT OF OWENS, AND WHETHER THE VERDICT OF GUILTY OF COUNT I WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

> *A. Sufficiency of the evidence*

¶19.   On review of the sufficiency of the evidence, this Court considers the trial court's

ruling at the last time the sufficiency of the evidence was challenged. ***Brown v. State***, 995 So. 2d 698, 701 (Miss. 2008). Wales last challenged the sufficiency of the evidence with his motion for a directed verdict, which he made when the State rested its case. The trial court denied the motion. Wales presented no evidence in his defense. On appeal, Wales challenges the sufficiency of the evidence supporting his conviction on Count I, the aggravated assault of Owens. He does not challenge his other convictions on weight or sufficiency grounds.

¶20. In reviewing a challenge to the sufficiency of the evidence, this Court determines whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (quoting ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence will be found sufficient "if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.'" ***Id.*** (quoting ***Edwards v. State***, 469 So. 2d 68, 70 (Miss.1985)). But if the facts and inferences, properly considered, "'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render." ***Id.*** (quoting ***Edwards***, 469 So. 2d at 70).

¶21. Under Mississippi Code Section 97-3-7(2)(b), one is guilty of aggravated assault when he "attempts to cause . . . bodily injury to another with a deadly weapon . . . ." Miss. Code

11

Ann. § 97-3-7(2) (Rev. 2006). Wales admits the evidence was sufficient to show that he and Jackson were armed with deadly weapons. But he argues that the evidence was insufficient to show that he attempted to cause bodily injury to Owens with a deadly weapon because he aimed and fired his gun at Michael, not Owens. In support of this argument, he cites Michael's testimony that Wales was shooting directly at him.

¶22. We find that the evidence was sufficient to have enabled a rational juror to find Wales guilty of the aggravated assault of Owens beyond a reasonable doubt. "Intent . . . ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them . . . ." *Harris v. State*, 642 So. 2d 1325, 1326 (Miss. 1994). When Wales fired the gun into the car, he first stood at the driver's side window, and then in front of the car, firing into the windshield. Owens was in the passenger seat. The photographs of the car windshield show four bullet holes distributed across the windshield. While it is impossible to know what actually was in Wales's mind as he fired the gun, Wales's intent to shoot Owens reasonably may be inferred from the fact that he fired shots into a car in which Owens was a passenger, and in her direction.

### B. Weight of the evidence

¶23. Wales challenged the weight of the evidence with his motion for a new trial, which was denied by the trial court. On appeal, he argues that the verdict of guilty of the aggravated assault of Owens was against the overwhelming weight of the evidence. On review of a challenge to the weight of the evidence, this Court will reverse only when the verdict was so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Bush*, 895 So. 2d at 844. A motion for a new trial should be

12

granted only when the evidence preponderates heavily against the verdict. *Id.* (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)).

¶24. The jury found that Wales had attempted to cause serious bodily injury to Owens with a deadly weapon. As previously stated, the evidence supporting the conviction was that Wales had fired his gun into the driver's side window and windshield of a car while Owens was sitting in the car's passenger seat. We find that the evidence did not preponderate so heavily against the verdict that the Court's failure to grant a new trial would sanction an unconscionable injustice. This Court holds that Wales's challenges to the sufficiency and weight of the evidence concerning Count I, the aggravated assault of Owens, are without merit.

> III. WHETHER THE TRIAL COURT ERRED BY DENYING WALES'S PROFFERED JURY INSTRUCTION ON THE SPECIFIC INTENT REQUIRED TO PROVE ARMED ROBBERY.

¶25. The trial court gave two jury instructions on armed robbery, one pertaining to the armed robbery of Michael and one pertaining to the armed robbery of Owens. The instructions were identical, except for the names of the victims and the items which Wales took or attempted to take from them. For Owens, the armed-robbery instruction charged the jury to find Wales guilty if it found that he did:

1. willfully, unlawfully, intentionally and feloniously and without authority of law;
2. take or attempt to take a purse
3. the personal property of Terwanda Owens
4. from the presence of and against the will of Terwanda Owens
5. by putting said Terwanda Owens in fear of immediate injury to her person
6. by the exhibition of a handgun, a deadly weapon; . . . .

The jury instruction on the armed robbery of Michael was identical, except that it named

13

Michael as the victim and named money as the property taken or attempted to be taken.

¶26.    At the jury-instruction conference, Wales requested instruction D-1, which stated:

> The Court instructs the jury that armed robbery is a specific intent crime, which requires the State to prove, beyond a reasonable doubt, that the defendant took the personal property of another with the intent to permanently deprive that person of their property.

The trial court denied the instruction on the grounds that it did not set out an element of the offense as described in the armed-robbery statute.

¶27.    The crime of armed robbery is codified at Mississippi Code Section 97-3-79, and provides, in pertinent part:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79 (Rev. 2006).  This Court has identified the following essential elements of armed robbery: "(1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." *Bush*, 895 So. 2d at 843.

¶28.    Our standard of review of the trial court's denial of a jury instruction is that "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Clark v. State*, 40 So. 3d 531, 544 (Miss. 2010) (quoting *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)).  A defendant is entitled to have jury instructions granted that present his theory of the case. *Id.*  Wales argues that, although the

14

language of instruction D-1 is not set out in the armed-robbery statute, it is a correct statement of the law, and its denial left the jury inadequately informed of the State's burden of proof on the armed-robbery counts. Wales argues that an armed-robbery conviction requires a jury finding that the defendant took the property with the specific intent to permanently deprive the owner of the property. He contends that caselaw requires that, in an armed-robbery case, the jury must be instructed that the State has the burden to prove, beyond a reasonable doubt, that the defendant took the personal property of another with the intent to permanently deprive that person of his property.

¶29.    Wales cites *Croft v. State*, 992 So. 2d 1151 (Miss. 2008), in support of his argument that the jury must be instructed that felonious intent is the intent to permanently deprive the victim of his property. Croft argued that the evidence was insufficient to support his armed-robbery conviction, because the evidence showed that, when he took money at gunpoint, he merely was recovering his own gambling proceeds. *Id.* at 1157-58. Therefore, according to Croft, he lacked felonious intent. *Id.* at 1157.

¶30.    This Court set out the elements of armed robbery under Section 97-3-79. *Id.* at 1158. Then, the Court stated the following regarding the element of felonious intent:

> Robbery is a specific-intent crime; as such, the State is required to prove that the defendant took the personal property of another with the intent to permanently deprive that person of his property. *Downs v. State*, 962 So. 2d 1255, 1259 (Miss. 2007). Thus, felonious intent means the intent to steal (animus furandi). *Thomas v. State*, 278 So. 2d 469, 471 (Miss. 1973). The issue of felonious intent is one of fact, and therefore falls within the exclusive province of the jury. *Williams v. State*, 317 So. 2d 425, 427 (Miss. 1975) (quoting 67 Am. Jur. 2d Robbery § 61, at 63 (1973)).

*Id.*

15

¶31.   The Court stated that the issue of felonious intent is for the jury, and that the specific intent to steal must be proven in robbery cases. *Id.* at 1159.  The Court noted that, in other jurisdictions, a loser in an unlawful gambling transaction who takes gambling proceeds from the winner under an unlawful claim of right is not guilty of robbery. *Id.* at 1158.  But the jury may find that the defendant's expressed intent to reclaim a debt was a pretext for an intent to steal. *Id.* at 1158-59.  Because the evidence showed that Croft took more than rightfully belonged to him in the gambling dispute, the evidence was sufficient to sustain Croft's conviction of armed robbery. *Id.* at 1160.

¶32.   Although ***Croft*** discussed the requirement that the State must prove the element of felonious intent, it did not address whether or when the jury must be instructed that felonious intent is the intent to deprive the person permanently of his or her property.  Three cases establish that such an instruction is required only when the evidence has raised an issue as to whether the defendant had the intent to permanently deprive the person of his or her property.  In ***Thomas v. State***, 278 So. 2d 469, 470 (Miss. 1973), the defendant was convicted of armed robbery for having taken police officers' guns and police car during his escape attempt.  Thomas argued the jury had been instructed inadequately on the specific intent required for armed robbery.  The jury instructions set out the element of intent as "unlawfully and feloniously take, steal, and carry away." *Id.* at 471.  The Court stated that specific intent to steal must be proven in robbery cases, and that, in larceny cases, a taking with the intent to return the property to its owner is not larceny. *Id.* at 472.  The Court held that the evidence supporting Thomas's robbery conviction was sparse, and that the jury instructions had not placed the element of intent before the jury. *Id.* at 473.  The Court

16

stated, "[w]e think that it was a jury issue as to whether or not the appellant took the property here involved from the policemen for the purpose of permanently depriving the owners of their property or whether or not he took the property with no intention of permanently depriving the owner of its possession." The Court also quoted the following from the North Carolina Supreme Court's holding in **State v. Mundy**, 265 N.C. 528, 144 S.E. 2d 572 (1965):

> A taking of personal property with felonious intent is an essential element of the offense of armed robbery, of attempt to commit armed robbery, and of common law robbery. The court must so instruct the jury in every robbery case, and must in some sufficient form explain and define the term "felonious intent." *The extent of the definition required depends upon the evidence in the particular case. In some cases, as where the defense is an alibi or the evidence develops no direct issue or contention that the taking was under a bona fide claim of right or was without any intent to steal, "felonious intent" may be simply defined as an "intent to rob" or "intent to steal." On the other hand, where the evidence raises a direct issue as to the intent and purpose of the taking, a more comprehensive definition is required.*

*Id.* at 574 (citations omitted) (emphasis added).

¶33.    The Court distinguished *Thomas* in **Lannom v. State**, 464 So. 2d 492 (Miss. 1985). Like Thomas, Lannom argued that the trial court improperly had failed to instruct the jury that the taking of the property was done with the intent to steal. *Id.* at 495. The Court disagreed, stating:

> In *Thomas*, there was a real question of whether the defendant had the intent to permanently deprive the owner of his property since the defendant had taken a police car and the policeman's gun during an escape attempt. *Thomas* is clearly distinguishable in that here there was no uncertainty that Lannom intended to *permanently* deprive Britt of the drugs and money taken on the night of the robbery.

*Id.* The Court also held that the words "rob" or "robbery" have well-defined meanings that include an intent to steal. *Id.* at 496. The Court found that the argument was without merit,

17

and, alternatively, that it was procedurally barred because Lannom had failed to request a jury instruction on intent. *Id.*

¶34. The Court again discussed *Thomas* in *Williams v. State*, 590 So. 2d 1374 (Miss. 1991). Williams was charged with the armed robbery of a firearm he took from a police officer during a confrontation. *Id.* at 1379. Williams argued that he had disarmed the officer because he was in fear for his life, and that he had intended to keep the gun for only a short time until "things had cooled down." *Id.* Thus, his defense was that he had lacked the intent to permanently deprive the officer of his firearm. *Id.* Upon Williams's challenge to the jury instructions, this Court held that the jury had been instructed properly on felonious intent by three jury instructions that required the State to prove that Williams had taken the gun with the specific intent to steal and to permanently deprive the owner of his property. *Id.* at 1380. The Court distinguished *Thomas*, holding that "when the issue is raised as to the intent and purpose of the taking, a more comprehensive definition [of felonious intent] is required." *Id.* at 1381.

¶35. Under *Thomas*, *Lannom*, and *Williams*, a jury instruction defining felonious intent as the intent to deprive the victim permanently of his or her property is necessary only when there is an issue as to whether the defendant had the intent to permanently deprive the victim of his or her property. As in *Lannom*, in this case, there was "no uncertainty that [Wales] intended to permanently deprive" the victims of their personal property. *See Lannom*, 464 So. 2d at 495. Wales's defense theory did not call into question his intent in taking the property. The jury instructions charged that the jury could convict Wales if it found he did willfully, unlawfully, intentionally and feloniously take or attempt to take the property of

18

Michael and Owens. The jury instructions adequately instructed the jury on the element of felonious intent, and this issue is without merit.

## CONCLUSION

¶36.   This Court affirms Wales's conviction and sentence.   We hold that substantial evidence supported the trial court's finding that Wales had waived his right to be present at trial, the evidence was sufficient to support the verdict of guilty in Count I and that verdict was not against the overwhelming weight of the evidence, and the jury instructions, taken as a whole, fully and fairly informed the jury of each element of the crime of armed robbery.

¶37.   **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY-FIVE (45) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT IV: CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY-FIVE (45) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  IN COUNT I: TWENTY (20) YEARS OF THE SENTENCE SHALL RUN CONCURRENTLY WITH ALL COUNTS, AND FIVE (5) YEARS SHALL RUN CONSECUTIVELY TO ALL COUNTS.  IN COUNT II: FORTY (40) YEARS OF THE SENTENCE SHALL RUN CONCURRENTLY WITH ALL COUNTS, AND FIVE (5) YEARS SHALL RUN CONSECUTIVELY TO ALL COUNTS.  IN COUNT III: TWENTY (20) YEARS OF THE SENTENCE SHALL RUN CONSECUTIVELY TO COUNT IV AND CONCURRENTLY WITH COUNTS I AND II, AND FIVE (5) YEARS SHALL RUN CONSECUTIVELY TO ALL COUNTS. IN COUNT IV: FORTY (40) YEARS OF THE SENTENCE SHALL RUN CONSECUTIVELY TO COUNT III AND CONCURRENTLY WITH COUNTS I AND II, AND FIVE (5) YEARS SHALL RUN CONSECUTIVELY TO ALL COUNTS.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR.**