IRVING, P.J.,
for the Court:
¶ 1. On October 6, 2010, after a joint trial, a jury found Rondell White Sr. and Cherrelle Jones guilty of felony child neglect. The Jefferson County Circuit Court sentenced White to ten years in the custody of the Mississippi Department of Corrections (MDOC), with eight years to serve, two years suspended, and two years of post-release supervision. The court sentenced Jones to ten years in the custody of the MDOC, with four years to serve, six years suspended, and six years of post-release supervision. White and Jones each filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict, which the circuit court denied.
¶ 2. Feeling aggrieved, White and Jones appeal and argue that there is insufficient evidence to support their convictions and that the jury’s verdicts are against the overwhelming weight of the evidence. Additionally, White contends that the circuit court discriminated against him during the trial’s sentencing phase.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. Jones and White are R.J.’s natural parents. On August 21, 2009, White took three-month-old R.J. to Jefferson County Hospital (JCH) in Fayette, Mississippi, after R.J. began having a seizure. When R.J.’s seizure began, he was at home alone with White. Jones was at the grocery store with Jacquawn, her four-year-old son. White called Jones and told her that he was taking R.J. to the hospital, and Jones agreed to meet them there. R.J. was later transferred from JCH to the Blair E. Batson Children’s Hospital (Bat-son) in Jackson, Mississippi.
¶ 5. Jones testified that during the week that R.J. had his seizure, he had been in someone else’s care on two occasions. She had allowed R.J.’s godmother[1] to take him to have his picture taken, and she had left R.J. alone with her younger brother[2] while she went to the store. Additionally, Jones claimed that R.J. had fallen out of bed during the week that he had the seizure. She explained that R.J. had become increasingly fussy after the fall but that she and Wdiite thought that he simply had an ear infection.
¶ 6. Jones stated that on the night before R.J.’s seizure, she had left him alone in the room with Jacquawn and had heard R.J. scream. She asked Jacquawn what had happened, but he denied harming R.J. Additionally, Jones testified that she observed the medical personnel at JCH while they were treating R.J. and claimed that they were “beating and patting” R.J. as they examined him. She testified that she did not see any bruises on R.J.’s body until he arrived at Batson. The doctors who evaluated R.J. at Batson later informed Jones that R.J. had a fractured skull, a broken rib, several bruises, and mild liver damage. Jones claimed that she did not know how R.J. had gotten injured.
¶ 7. Wdiite confirmed that he was taking care of R.J. on the morning of his seizure. R.J. had been fussy that morning, so White had tried to calm R.J. by rocking him. When that technique failed, White laid R.J. on the bed and left the room to prepare R.J.’s bottle. Soon after, he heard R.J. scream. When White returned to the bedroom, R.J. appeared to be going “into a shock.” Similar to Jones, WTiite suggested that JCH personnel had injured R.J. WTiite claimed that he did not see any *1001 bruises on RJ.’s body until the doctors examined him at Batson, but he had observed the medical personnel at JCH “pushing [R.J.’s] knees toward his chest trying to loosen him up.” White explained that he did not ask the medical personnel any questions regarding their techniques because he assumed that they “knew what they [were] doing.” Like Jones, White testified that he did not know the source of R.J.’s injuries.
¶ 8. Dr. Scott Benton, a pediatric physician, examined R.J. after he had arrived at Batson. Dr. Benton testified that R.J. had a fractured skull, a fractured rib, extensive bruising, and moderate liver damage. He noted that the bruises that he had observed across R.J.’s thighs and buttocks were shaped like a handprint or a finger. Additionally, Dr. Benton testified that R.J.’s injuries were “relatively fresh” and had all occurred no more than a week prior to R.J.’s seizure.
¶ 9. Dr. Benton confirmed that falling from a significant height could cause skull fractures to infants. However, Jones had described the height of the bed from which R.J. had allegedly fallen to Dr. Benton,[3] and he did not believe that a fall from a bed of that height could have caused R.J.’s skull fracture. Additionally, Dr. Benton testified that, even if R.J. had fallen from a bed, the fall would not explain his other injuries. Furthermore, Dr. Benton noted that neither Jacquawn nor the medical personnel at JCH could have caused R.J.’s injuries, as White and Jones had suggested. Dr. Benton opined that R.J. was a victim of “battered child syndrome.”
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Sufficiency of the Evidence

¶ 11. Both White and Jones argue that there is insufficient evidence to support their felony-child-neglect convictions. “In reviewing a challenge to the sufficiency of the evidence, [appellate courts] determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.” Wales v. State, 73 So.3d 1113, 1120-21 (¶ 20) (Miss.2011) (citing Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). The evidence is sufficient where “reasonable!,] fair-minded men[,] in the exercise of impartial judgment!,] might reach different conclusions.” Id. at 1121 (¶ 20) (quoting Bush, 895 So.2d at 843 (¶ 16)). However, “if the facts and inferences, properly considered, point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.” Id. (internal quotations omitted) (quoting Bush, 895 So.2d at 843 (¶ 16)).
¶ 12. Under Mississippi Code Annotated section 97-5-39(l)(c) (Rev.2006), one is guilty of felony child neglect when he “knowingly permits the continuing physical ... abuse of a child-” White and Jones contend that the State failed to prove that they knowingly permitted R.J.’s continuous physical abuse. However, based on our review of the record, there is sufficient evidence to support the jury’s verdict.
*1002 ¶ 13. The State presented evidence that R.J. was primarily in White’s and Jones’s care when he was injured. Furthermore, White and Jones failed to offer plausible explanations for R.J.’s injuries. Dr. Benton opined that R.J.’s injuries were not self-inflicted or accidental, and he eliminated Jones’s explanations concerning R.J.’s alleged fall from the bed and a possible incident with Jacquawn as the cause of R.J.’s injuries. Based on the evidence in the record, a rational trier of fact could have found Jones and White guilty of felony child neglect beyond a reasonable doubt. Accordingly, this issue is without merit.

2. Weight of the Evidence

¶ 14. White and Jones argue that they are entitled to a new trial because the jury’s verdicts are against the overwhelming weight of the evidence. “On review of a challenge to the weight of the evidence, [appellate courts] will reverse only when the verdict [is] so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Wales, 73 So.3d at 1121 (¶ 23) (citing Bush, 895 So.2d at 844 (¶ 18)). Additionally, a motion for a new trial “should be granted only when the evidence preponderates heavily against the verdict.” Id. (citing Bush, 895 So.2d at 844 (¶ 18)).
¶ 15. The jury found that White and Jones knowingly permitted RJ.’s continuous physical abuse. The evidence supporting the jury’s verdict is that R.J. was primarily in White’s and Jones’s care when he was injured. Additionally, Dr. Benton testified that R.J.’s injuries were not self-inflicted or accidental and were “recognized as being associated with abuse.” Moreover, even though the jury heard conflicting testimony from Jones, White, and Dr. Benton regarding the source of R.J.’s injuries, it is the jury’s role to weigh witness testimony and resolve any conflict therein. See Brown v. State, 995 So.2d 698, 702 (¶ 13) (Miss.2008). Therefore, we cannot say that the evidence preponderates so heavily against the verdict that the circuit court’s failure to grant a new trial would sanction an unconscionable injustice. This issue is without merit.

3. Gender Discrimination

¶ 16. White argues that the circuit court discriminated against him during the trial’s sentencing phase. Specifically, White alleges that the court imposed a greater sentence on him because he is male. “It is well-settled in this state that sentencing is within the complete discretion of the [circuit] court.” Long v. State, 52 So.3d 1188, 1195 (¶ 26) (Miss.2011) (citing Hoops v. State, 681 So.2d 521, 537 (Miss.1996)). Furthermore, as a general rule, “a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.” Id. (quoting Hoops, 681 So.2d at 538). Even though White claims that his sentence should have been identical to or less than Jones’s sentence, his sentence does not exceed the maximum term allowed under section 97—5—39(l)(c);[4] therefore, we decline to disturb it on appeal.
¶ 17. THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT OF CONVICTION OF RON-DELL WHITE SR. OF FELONY CHILD NEGLECT AND SENTENCE *1003 OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH EIGHT YEARS TO SERVE, TWO YEARS SUSPENDED, AND TWO YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED.
¶ 18. THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT OF CONVICTION OF CHER-RELLE JONES OF FELONY CHILD NEGLECT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS TO SERVE, SIX YEARS SUSPENDED, AND SIX YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED.
¶ 19. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. R.J.'s godmother’s name is not in the record.

. Jones's brother’s name is not in the record.

. Jones did not give the numerical height of the bed. She explained the bed’s height to Dr. Benton by comparing it to the height of a couch in the room where she and Dr. Benton were talking.

. Section 97—5—39(l)(c), states:
A parent, legal guardian or other person who knowingly permits the continuing physical or sexual abuse of a child is guilty of neglect of a child and may be sentenced to imprisonment for not more than ten (10) years or to payment of a fine of not more than Ten Thousand Dollars ($10,000.00), or both.
(Emphasis added).