# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-00314-SCT

*ALVIN C. WILSON a/k/a ALVIN WILSON a/k/a*
*ALVIN CORNELIOUS WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2018 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | MATTHEW SULLIVAN |
| | CARTER SMITH |
| | STEPHANIE WOOD |
| | CHRIS HENNIS |
| | JONAS BOWEN |
| | RANCE N. ULMER |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | MATTHEW SULLIVAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/11/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS AND KING, P.JJ., AND COLEMAN, J.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     On August 1, 2016, a grand jury indicted Wilson for sexual battery in violation of Mississippi Code Section 97-3-95(1)(d) (Rev. 2014).  The indictment charged Wilson with willfully, unlawfully, and feloniously engaging in sexual penetration with a child under the

age of fourteen years old on or about March 1, 2012. The indictment provided that at the time of the sexual battery, Wilson was over the age of eighteen and was twenty-four months older than the victim.

¶2. A Jasper County jury found Wilson guilty of sexual battery as charged. The trial court sentenced Wilson to thirty-five years, with thirty years to be served day for day followed by five years of supervised post release supervision. Wilson appeals, arguing that the trial court erred by (1) admitting into evidence a video recording of his interview with law enforcement and (2) proceeding with his trial and sentencing *in absentia*. Discerning no error, we affirm Wilson's conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

¶3. The trial court appointed public defender Rance Ulmer to represent Wilson. On August 22, 2016, Wilson personally appeared before the trial court, waived arraignment, and entered a plea of not guilty. Wilson was released on bond, and the court set trial for February 14, 2017. The trial court ordered that Wilson remain in constant contact with his attorney and keep him advised of changes to his address and phone number.

¶4. On February 9, 2017, Wilson appeared before the trial court and entered a plea of not guilty. The trial court entered an order allowing Wilson to remain out on bond and setting trial for February 7, 2018. The order again required Wilson to remain in constant contact with his attorney and to keep him advised of any change of address and phone number. The order also provided that Wilson's "failure to appear on the aforementioned date may result

2

in [Wilson's] being tried in [his] absence." Wilson signed the order, agreeing to its form and content.

¶5.    On February 1, 2018, Wilson filed a petition to plead guilty to statutory rape in violation of Section 97-3-65(1)(b) (Rev. 2014).  Wilson was scheduled to appear before the trial court to enter his guilty plea on Monday, February 5, 2018, but Wilson did not appear. After Wilson failed to appear, the sheriff's department attempted to contact Wilson. Likewise, Ulmer attempted to contact Wilson.  Ulmer and the sheriff's department were unsuccessful.

¶6.    Trial commenced as scheduled on Wednesday, February 7, 2018.   The State announced it was ready for trial.  The trial court then asked Ulmer whether Wilson was present.  Ulmer responded that he had not seen Wilson and moved for a continuance because of his absence.  Ulmer explained,

> Last Wednesday, which according to my calendar is January 31st, 2018, I met with Mr. Wilson at my office along with his wife.  We discussed this case and prepared, went over a guilty plea which he signed, executed, and we filed the next day, February 1st, 2018.  He has previously been told of his trial both by verbally and by mail, which is today February 7th, 2018.
>
> Since he was supposed -- he was to appear before this Court Monday, February the 5th, 2018, to enter his guilty plea in Bay Springs at 1 o'clock p.m.  He did not show up.  After that, my secretary and I made numerous phone calls to two different numbers that I have in my file.  One number is disconnected, which is if I recall correctly is the number, his number which it says -- the answering machine disconnected, unavailable, and I forgot the other term that the voice on the phone left.  The other number was to his mother, which just said the mailbox was full and hung up.  Or no, excuse me, the mailbox had not been set up and hung up.
>
> I tried to contact him after 5 o'clock on Monday and I believe on yesterday. Still to no avail contact him at either number.  I do not know if he has had an

3

emergency, but he is not here today and I feel on behalf -- to do my duty, I have to ask the Court for a continuance.

¶7.   Ulmer informed the trial court that the last day he had contact with Wilson had been on January 31, 2018.  Before the last contact, Ulmer stated that he and Wilson had spoken about his case, including possible defenses.  The State offered into evidence the trial court's February 9, 2017, order of arraignment setting the case for trial on February 7, 2018.  Ulmer had no objection, and the order was admitted into evidence.  The trial court also recalled that the February 7, 2018, trial date had been confirmed at docket call.

¶8.   The State called Investigator Chris Thompson of the Jasper County Sheriff's Department to the stand.  Investigator Thompson testified that on February 6, 2018, he went to Wilson's address on file.  Upon arriving at the address, Thompson spoke to Wilson's mother, who advised Thompson that she had not heard from Wilson in "a couple of days."  Wilson's mother provided a phone number to Investigator Thompson.  Investigator Thompson called the number on February 6, 2018, and February 7, 2018, the day of trial.  Investigator Thompson was unable to contact Wilson with the phone number provided by Wilson's mother.

¶9.   The trial court denied the motion for continuance in light of the evidence presented, the arraignment order setting the trial for February 7, 2018, and the confirmation of the trial date at docket call.  The trial court recognized Wilson's constitutional right to be present in the courtroom at every stage of his trial, however it noted that the right is subject to waiver. The trial court found that Ulmer had made diligent efforts to contact Wilson.  The trial court

4

also found that Ulmer had done everything within his power to have his client present for trial.

¶10. The trial court found that sufficient evidence had been presented showing that Wilson's absence was not due to any intervening cause other than Wilson's own willful and voluntary absence. The trial court found that Wilson's absence was willful and voluntary amounting to a deliberate attempt to avoid trial. As such, the trial court concluded that Wilson had waived his right to be present at trial and ordered that the trial proceed *in absentia*. Ulmer announced that he was ready for trial, and the trial proceeded.

¶11. At the time of trial, the minor victim Jane[1] was seventeen years old. Jane testified that she was born on October 26, 2000. Jane testified that in 2012, Wilson was her mother's boyfriend and that he lived with Jane and her mother. Jane testified that she had sexual intercourse with Wilson on March 1, 2012. On March 1, 2012, Jane was eleven years old, and Wilson was twenty-two years old. Jane became pregnant and, at the age of twelve years old, gave birth to her daughter Mary[2] on December 6, 2012. Jane testified that Wilson is Mary's father.

---

[1] To protect the identity of the minor victim, the Court will use the fictitious name Jane.

[2] To protect the identity of the victim's daughter's name, the Court will use the fictitious name Mary.

¶12. Investigator Thompson testified that he investigated the alleged sexual battery of Jane. After Wilson waived his *Miranda*[3] rights, Investigator Thompson interviewed Wilson. A video of the interview was played for the jury and entered into evidence.

¶13. Forensic DNA analyst Katherine Rodgers testified as an expert in the field of DNA testing. Rodgers performed a paternity test to determine whether Wilson was Mary's father using DNA samples from Wilson, Jane, and Mary. Rodgers testified that Wilson could not be excluded as the biological father of Mary. Rodgers opined that the probability that Wilson is the father of Mary is 99.999998 percent compared to an untested, unrelated man of the same race. Rodgers prepared a report of her findings, which was admitted into evidence.

¶14. The jury found Wilson guilty of sexual battery in violation of Section 97-3-95(1)(d) as charged in the indictment. The trial court sentenced Wilson to thirty-five years, with thirty years to be served day for day and the remaining five years to be served on supervised post release supervision.

¶15. Following trial, Wilson filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. The trial court denied the motion, and Wilson filed a notice of appeal. On appeal, Wilson raises two assignments of error: (1) whether the trial court erred by admitting a video recording of Wilson's interview with law enforcement into evidence and (2) whether the trial court erred by trying and sentencing Wilson *in absentia*.

## STANDARD OF REVIEW

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

¶16. The admission or exclusion of evidence is reviewed for an abuse of discretion. *Hargett v. State*, 62 So. 3d 950, 952 (¶ 7) (Miss. 2011). "Unless the [trial court] abuses [its] discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Shaw v. State*, 915 So. 2d 442, 445 (¶ 8) (Miss. 2005) (quoting *Jefferson v. State*, 818 So. 2d 1099, 1104 (Miss. 2002)).

¶17. The decision to grant or deny a motion for a continuance is reviewed for an abuse of discretion. *Miles v. State*, 249 So. 3d 362, 367 (¶ 23) (Miss. 2018). Likewise, the decision to try a felony defendant *in absentia* is reviewed for an abuse of discretion. *Wales v. State*, 73 So. 3d 1113, 1119–20 (¶¶ 16-18) (Miss. 2011).

## DISCUSSION

### I. Whether the trial court erred by admitting the video of Wilson's interview with law enforcement.

¶18. Wilson argues that the trial court erred by admitting a video of Wilson's inculpatory interview with law enforcement because no foundation had been established by the State under Mississippi Rule of Evidence 901. Wilson argues that no evidence was presented showing that the video recording was accurate. Wilson also argues that no evidence explained how the recording was made and whether the equipment used was functioning properly or otherwise was reliable.

¶19. At trial, Investigator Thompson testified that he had interviewed Wilson as part of the investigation of the case. Investigator Thompson testified that he read Wilson his *Miranda* rights prior to conducting the interview. Investigator Thompson testified that Wilson waived his *Miranda* rights and executed a *Miranda* waiver form. Investigator Thompson testified

7

that, after executing the *Miranda* waiver, Wilson provided a statement to him in the Jasper County Sheriff's Department's interview room. Investigator Thompson testified that the statement was video recorded. Investigator Thompson also testified that he did not threaten or coerce Wilson into providing the statement. Investigator Thompson testified that the statement was freely and voluntarily given. Investigator Thompson testified that he did not offer any reward to Wilson in exchange for making the statement. Investigator Thompson testified that Wilson did not appear to be under the influence of alcohol or drugs.

¶20.  After the *Miranda* waiver was admitted into evidence without objection, the following colloquy ensued:

> MR. SMITH:[4]     I would also ask at this point in time that the video statement that [Investigator Thompson] just mentioned be entered into evidence and be allowed to play it for the jury at this time.
>
> THE COURT:      Any objection?
>
> MR. ULMER:      Play the whole thing, Judge.

¶21.  The video was then played for the jury. After the video concluded, the State requested that the video be admitted into evidence. Ulmer objected "for lack of a proper foundation to admit the video into evidence." The State responded that it had laid the proper foundation, that Wilson had been advised of his *Miranda* rights, that the statement was voluntary, and that the statement had been provided without threat or coercion.

¶22.  Ulmer raised no specific concern about the accuracy, video recording equipment, or reliability of the video recording; rather, Ulmer inquired about the date of the executed

---

[4] The prosecutor for the State was Carter Smith.

8

*Miranda* waiver. Investigator Thompson verified the date of the waiver, and the trial court overruled the objection. Investigator Thompson then testified that Wilson had provided his video recorded statement immediately after he had executed the *Miranda* waiver. The trial court then admitted the video statement into evidence.[5] The State asked Investigator Thompson a follow up question: "to recap that interview with you, what did Mr. Alvin Wilson admit to you during the statement?" Ulmer objected, and the trial court said he would allow "some leeway[, b]ut Mr. Smith the video is going to speak for itself."

---

[5] The record's exhibit envelope contains a CD/DVD purporting to be the subject interview. The CD/DVD is marked "Alvin Wilson Interview 9-24-15" along with the exhibit sticker labeled "EXHIBIT S-3." The CD/DVD contains two video files. The video files are a video recording of a law enforcement interview with a female apparently from an entirely unrelated case based on the content of the interview. No other video file is on the CD/DVD, and no other CD/DVD is contained in the exhibit folder or elsewhere in the record.

On June 8, 2018, the Jasper County Circuit Clerk served notice of the completion of the appeal record for attorney review as required by Mississippi Rule of Appellate Procedure 11(d)(2). On June 21, 2018, Ulmer certified that the record was correct and complete to the best of his knowledge after careful examination as required by Rule 10(b)(5). On July 19, 2018, Ulmer filed a motion to withdraw and requested that the Indigent Appeals Division of the Office of the State Public Defender be substituted as counsel of record. On June 23, 2018, Ulmer's motion was granted. Although the representations made in the parties' briefs and exhibit list indicate that Wilson's video interview is in the record, it is not. Wilson's appellate counsel had the "duty to see that all . . . exhibits . . . are included in the record, and he may not complain of his own failure in that regard. . . . There are adequate procedures and safeguards to assure that incorrect or incomplete records are remedied." *State ex rel. Miss. Bureau of Narcotics v. Canada*, 164 So. 3d 1003, 1006 (¶ 9) (Miss. 2015) (quoting *Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (¶ 4) (Miss. 2002)). Notwithstanding appellate counsel's failure, a review of the police interview is not necessary for purposes of the issues on appeal. Both parties agree that the interview contained inculpatory statements. Other than generally referring to the statements as inculpatory, neither party describes the substantive content of the interview.

9

¶23. Based on Wilson's trial counsel's invitation to "play the whole thing, Judge[,]" we cannot say that Wilson suffered any prejudice due to the subsequent admission of the video interview into evidence. *See Shaw*, 915 So. 2d at 445 (¶ 8) ("Unless the [trial court] abuses [its] discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." (quoting *Jefferson v. State*, 818 So. 2d 1099, 1104 (¶ 6) (Miss. 2002))).

¶24. Notwithstanding Ulmer's invitation to play the entire video, Wilson's interview was sufficiently authenticated by Investigator Thompson's testimony under Mississippi Rule of Evidence 901. Rule 901 provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." M.R.E. 901(a). An example that satisfies the requirement is testimony of a witness with knowledge that an item is what it is claimed to be. M.R.E. 901(b)(1). "A party need only make a prima facie showing of authenticity, not a full argument on admissibility. 'Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court.'" *Walters v. State*, 206 So. 3d 524, 535 (¶ 32) (Miss. 2016) (quoting *Sewell v. State*, 721 So. 2d 129, 140 (¶ 60) (Miss. 1998)).

¶25. Wilson cites *Conway v. State*, 915 So. 2d 521, 526 (¶ 19) (Miss. Ct. App. 2005), in support of his argument. In *Conway*, the Mississippi Court of Appeals reasoned that an edited surveillance video of the crime scene was admitted without proper authentication, because the officer whose testimony had been used to authenticate the video was not present at the crime scene, the officer had not edited the original video, and the officer never

indicated that he had ever watched the original video. *Id.* at 526 (¶¶ 18-19) (concluding that the State had failed to prove that the officer had sufficient knowledge of the crime scene in order to testify that the edited videotape accurately depicted the events on the day in question). Unlike the testimony in *Conway*, the authentication testimony offered to authenticate Wilson's video interview was based on information within Investigator Thompson's knowledge.

¶26. Investigator Thompson testified that he personally conducted the interview with Wilson. Investigator Thompson testified about the events immediately preceding Wilson's statement involving his waiver of *Miranda* rights. Investigator Thompson also described where he interviewed Wilson. Furthermore, Investigator Thompson testified that the interview had been video recorded.

¶27. Investigator Thompson, who was familiar with and had knowledge of the contents of the recording, provided testimony supporting the trial court's finding that the video interview was what the State claims it was, *i.e.*, Wilson's interview with Investigator Thompson. Authentication might be accomplished "by testimony from someone familiar with and with knowledge of the contents of the document or recording" under Rule 901(b)(1). *Corrothers v. State*, 148 So. 3d 278, 310 (¶ 78) (Miss. 2014) (quoting *Bunch v. State*, 123 So. 3d 484, 492 (¶ 20) (Miss. Ct. App. 2013)). The trial court did not abuse its discretion by admitting the video interview into evidence.

II.      **Whether the trial court erred by trying and sentencing Wilson *in absentia*.**

¶28. Wilson argues that, although he did not appear for his scheduled trial, the trial court erred by denying his motion for a continuance, because it was not abundantly clear that his absence was willful. Wilson also argues that the trial court erred by proceeding with his trial and sentencing him *in absentia*.

¶29. "The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." ***Simmons v. State***, 805 So. 2d 452, 484 (¶ 72) (Miss. 2001) (citing ***Coleman v. State***, 697 So. 2d 777, 780 (Miss. 1997)). Here, the trial court properly proceeded within its discretion under Mississippi Code Section 99-17-9, which provides

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (Rev. 2015). The trial court's discretion under Section 99-17-9 is "limited by the fact that a felony defendant has a constitutional right to be present at trial." ***Wales***, 73 So. 3d at 1120 (¶ 17) (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26).

¶30. In ***Wales***, the Court held that the trial court did not abuse its discretion in finding that defendant Leo Wales had voluntarily absented himself from his trial. ***Wales***, 73 So. 3d at 1120 (¶ 18). The Court explained that Wales had assisted in his defense by consulting with his attorney in anticipation of trial a week later. ***Id.*** Although Wales knew his trial date, he did not appear at the courthouse for his trial. ***Id.*** The Court noted that extensive efforts to

12

locate Wales over a two day period by the prosecution, the defense, and law enforcement were fruitless. *Id.* Like Wilson, Wales argued that "no direct evidence was before the trial court that his absence was voluntary[,]" however, the Court held that "substantial circumstantial evidence was before the trial court demonstrating Wales's intent to avoid trial." *Id.*

¶31. Here, Wilson failed to appear on the date of his scheduled trial, and the trial court thoroughly inquired into Wilson's nonappearance. Ulmer informed the trial court that he personally told Wilson that his trial was set for February 7, 2018. Ulmer informed the trial court that Wilson had been advised of his February 7, 2018, trial date by mail. Ulmer explained his multiple unsuccessful efforts to contact Wilson, even though Wilson had been ordered by the trial court to keep in constant contact with his trial counsel, including advising his trial counsel of any address or telephone number changes. Investigator Thompson also testified that he had made multiple unsuccessful efforts to contact Wilson after he had failed to appear at a hearing two days before his scheduled trial date.

¶32. Based on the evidence presented, the trial court found that Wilson's absence had been a willful, voluntary, and deliberate attempt to avoid trial. As a result, the trial court found that Wilson waived his constitutional rights to be present at trial. As in *Wales*, we hold that the trial court did not abuse its discretion in trying Wilson *in absentia*.[6]

¶33. Alternatively, Wilson argues that even if the trial court did not err by trying him *in absentia*, the trial court should have waited to sentence Wilson until he was in custody.

---

[6] Wilson never raised—at trial or on appeal—Mississippi Rule of Criminal Procedure 10.1, which went into effect on July 1, 2017.

¶34. After the jury returned a guilty verdict, the trial court announced

> Because we tried this matter *in absentia* under Section 99-17-9, as I read the statute even though we had trial today, we may proceed to final judgment. Any objection from the defendant on me sentencing Mr. Wilson at this time?

¶35. Ulmer responded that he was not familiar with the statute and that he would "certainly defer to [the trial court's] judgment on [the statute]." The State also stated that it would "[d]efer to the [trial c]ourt." After reviewing the statute, the trial court found that it might progress with sentencing at its discretion. The trial court proceeded by sentencing Wilson as though he were present.

¶36. Even if Wilson's alternative argument had been properly preserved, his argument wholly lacks merit. As written above, the trial court did not abuse its discretion by finding that Wilson had waived his constitutional rights to be present at trial and by trying him *in absentia*. Under Section 99-17-9, "the trial may progress at the discretion of the court, and judgment made final *and sentence awarded as though such defendant were personally present in court*." Miss. Code Ann. § 99-17-9 (emphasis added).

## CONCLUSION

¶37. For the reasons stated above, we affirm the trial court's judgment.

¶38. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**