IRVING, J.,
for the Court.
¶ 1. Jeffrey Leon Enlow was convicted in the Circuit Court of Monroe County of simple assault on a police officer and sentenced to a term of five years in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment below, Enlow has appealed and presents eight issues: (1) whether he was deprived of his right to effective assistance of counsel, due process and a right to a fair trial where adequate instructions were lacking, (2) whether the trial court erred in overruling the appellant’s motion to dismiss *1113 the charges or in the alternative for a directed verdict at the close of the State’s case-in-chief, (3) whether the trial court erred in denying the appellant’s motion for a directed verdict at the close of appellant’s case, (4) whether the evidence was sufficient as a matter of law, (5) whether he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution, (6) whether the court erred in allowing the State to make prejudicial reference to prior bad acts in violation of Rule 404 of the Mississippi Rules of Evidence, (7) whether the court’s failure to adequately poll the jury requires reversal, and (8) whether the cumulative effect of the aforementioned errors greatly prejudiced Enlow and rendered a fair trial impossible.
¶ 2. Ascertaining no error, we affirm.
FACTS
¶ 3. In the early morning hours of March 24, 2001, a disturbance transpired at Uncle Joe’s Food Mart in Nettleton, Monroe County, Mississippi. A truck suddenly sped through the store’s parking lot and abruptly stopped at the store. Within the truck were two women, both of whom seemed agitated and distressed. The women beckoned for A.D. Heard, a uniformed Nettleton police officer who was inside of Uncle Joe’s, to come outside. The women quickly explained to Heard that someone was pursuing them and possibly trying to kill them. Heard started taking their complaint. Shortly thereafter, Jeffrey Enlow appeared from around the corner of the store. At this point, the facts are largely in dispute as to the events that transpired.

A.D. Heard’s version

¶ 4. According to Heard, Enlow suddenly emerged and appeared to be very upset. He testified that Enlow continually made threats to the women. Heard explained that he repeatedly advised Enlow to stay back from the women while he was taking their statements but that Enlow persisted in approaching the women. Heard testified that he eventually put his hand on Enlow’s chest to hold him back and warned Enlow that if he continued to disobey his orders that he would have to arrest him. According to Heard, Enlow retorted that “no n-r” was going to arrest him. Heard explained that he then turned around to finish taking the women’s statements when he was suddenly struck in the back of the head by Enlow. Heard testified that a scuffle ensued between him and Enlow and that soon after, Billy Willis and James Neal, two bystanders, helped him restrain and arrest Enlow.

Enloiv’s version

¶ 5. Enlow testified that earlier that evening he and his fiancée, Debbie Coggin Smith, were at Smith’s house eating supper. He explained that a black pickup truck kept circling the house or going up and down the road. Enlow further testified that someone was coming to the house and ringing the doorbell, knocking on the door, or knocking on the outside wall of the house. He explained that when he looked out of the door, the culprit was gone and that only the black pickup truck with tinted windows was there.
■ ¶ 6. Enlow testified that Smith decided to find out who was in the truck and went to the Nettleton Police Department for help. He testified that meanwhile he called his friend Harold Neal, a distant cousin of Smith, to assist in the search of the pickup truck. Enlow further testified that Smith was unable to locate the police but informed him that Neal had located the truck at Uncle Joe’s. He explained that he then proceeded to the store.
*1114 ¶ 7. Enlow testified that, when he arrived at Uncle Joe’s, he saw Officer Heard talking to two women standing next to the truck. He explained that, as he approached the officer and women, he repeatedly asked the women what they were doing. He testified that Officer Heard then turned around and told him that he was taking a statement from the women and to stay back. According to Enlow, he repeated his inquiry to the women, and Officer Heard repeated his warning to En-low to stay back. At that point, Neal told him to come on. He explained that when he turned around to walk toward Neal, Officer Heard hit him with such force as to “idle” him. Enlow testified that he did not recall a whole lot after Officer Heard’s attack until the time he was arrested.
¶ 8. Enlow was indicted for simple assault on a police officer and convicted after a two-day trial. Following the filing and denial of post-trial motions, this appeal ensued.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Ineffective Assistance of Counsel

¶ 9. We first note that issues one and five deal with ineffective assistance of counsel. We further note that issue six is substantially incorporated in the ineffective assistance of counsel claim. Therefore, we shall address these issues jointly.
¶ 10. In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney’s performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Davis v. State, 849 So.2d 1252 (Miss.2003), our supreme court further articulated:
This Court looks at the totality of the circumstances to determine whether counsel’s efforts were both deficient and prejudicial. “Judicial scrutiny of counsel’s performance [is] highly deferential.” There is a strong but rebuttable presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that but for the attorney’s errors, the outcome of the trial would have been different, will we find that counsel’s performance was deficient.
Id. at 1256-57(¶ 18) (citations omitted).
¶ 11. In his assignment of errors, En-low gives a laundry list of claims against his counsel for ineffective assistance:
(1) His trial counsel’s handling of the Batson issue was ineffective. Counsel failed to properly preserve the issue and argue race-neutral grounds for peremptory strikes.
(2) His trial counsel’s failure to raise issues regarding prejudicial statements (n-r) and other bad acts by utilizing pre-trial motions was ineffective.
(3) His trial counsel failed to make argument regarding instructions offered and failed to include a lesser included instruction of resisting arrest and failed to request an instruction defining bodily injury.
(4) His trial counsel failed to object to numerous “for cause” challenges of the State permitted by the court.
(5) His trial counsel failed to object to the testimony of prior bad acts timely and effectively.
(6) His trial counsel failed to timely disclose documentary evidence (the map of Ms. Smith) that was offered and refused by the court.
*1115 (7) His trial counsel failed to object to clearly improper redirect where the alleged victim first offered testimony that Enlow attempted to take his weapon.
(8) His trial counsel made a motion for a directed verdict for acquittal and the trial court took it under advisement, thereafter, he failed to renew his motion or seek a ruling from the court before the close of trial.
¶ 12. While Enlow makes eight claims of ineffective assistance of counsel, he wholly fails to demonstrate how these claims, with the exception of numbers three and five, prejudiced his case to the point where the outcome would have been different. Therefore, we examine only the third and fifth claims of ineffective assistance of counsel made by Enlow.
A Jury instructions
¶ 13. Enlow first argues that the lesser-included offense instruction of resisting arrest should have been included in the instructions to the jury. He further asserts that the court’s instructions to the jury regarding simple assault upon an law enforcement officer failed to define or mention “bodily injury.” Enlow points out that his attorney’s failure to request these instructions is indicative of ineffective assistance of counsel and a violation of due process.
Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such. This Court has also held that instructions must be warranted by the evidence and should not be indiscriminately granted. To warrant the lesser-included offense instruction, a defendant must point to some evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense.
Goodnite v. State, 799 So.2d 64, 69(¶ 24) (Miss.2001).
¶ 14. The evidence demonstrates that the lesser-included offense instruction of resisting arrest was not warranted in this case as there was no evidentiary basis to support that instruction. There was no testimony from any witnesses that Enlow struck Officer Heard in the course of the officer arresting Enlow. The only mention by these witnesses of an arrest by Officer Heard came after Enlow delivered his blow to the officer. Moreover, the defense in this case was that Enlow was the victim of an assault by Officer Heard without Enlow having retaliated against the officer. None of the witnesses for the defense testified that Enlow delivered a blow to the officer during the course of the arrest. Therefore, no lesser-included instruction of resisting arrest was warranted and counsel for Enlow was not ineffective in his failure to ask for the instruction.
¶ 15. Moreover, we also find no merit to Enlow’s contention that his counsel was ineffective for failing to request an instruction concerning bodily injury. While Mississippi Code Annotated section 97-3-7 (Supp.2003) does not define bodily injury, our supreme court has found that the statute is not constitutionally vague with its inclusion of bodily injury and that a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden by that term. See Reining v. State, 606 So.2d 1098, 1103 (Miss.1992). Further, we point out that defense instruction D-17, which was granted and later recited to the jury, includes the term “body injury” in its discussion of the State’s burden of proof. We therefore find no merit in Enlow’s contention that counsel was ineffective for not *1116 requesting a further instruction concerning bodily injury.

B. Admission of bad acts evidence

¶ 16. Enlow argues that the circuit court erred in allowing the State to make prejudicial reference to prior bad acts in violation of rule 404 of the Mississippi Rules of Evidence and that his trial counsel was ineffective for failing to object.
¶ 17. The record demonstrates that the State asked Enlow several questions about whether he was involved with or had ever used narcotics. Counsel for Enlow objected and asserted that the State should have to show convictions to make such inquiries of Enlow. The circuit judge explained that Enlow was on cross-examination, decided that she would allow the questioning, and asked the State to move on to its other questions. Later in the trial, in response to Enlow’s allegations that the police had it in for him, the State subsequently asked Enlow why the police would have anything against him. Counsel for Enlow objected and suggested that the State was trying to elicit evidence of a subsequent charge of simple assault on a law enforcement officer. A bench conference was conducted with both counsel outside the presence of the jury. During the conference, the State explained that its questions were in response to testimony given earlier by En-low that he was not the type of person that would attack a police officer. After hearing arguments from both sides, the judge advised the State not to pursue that line of questioning for fear that it might elicit prejudicial testimony. That line of questioning was not revisited by the State as to Enlow. However, the State later questioned defense witness, Debbie Smith, as to why the police might not like Enlow. This questioning elicited a response by Smith that the police had a vendetta against Enlow because he might be a possible suspect in the death of a former Shannon, Mississippi chief of police. No objection was made by Enlow’s counsel.
¶ 18. Our review of the record indicates that at least some of the questioning about which Enlow complains was essentially in response to the claim made by Enlow that he was suddenly struck by Officer Heard for no apparent reason. With Enlow having made this assertion, it was certainly reasonable to expect that the State would attempt to prove that law enforcement officials, and Officer Heard in particular, had no reason to suddenly attack Enlow without provocation. One way to accomplish this task would be to ask Enlow and his witnesses if they knew of any reason why the police might not like Enlow, assuming the State was certain that the police harbored no ill will toward Enlow. It may be, as Enlow contends, that the State knew it would get the answer it got from Smith, but that is pure speculation. Nothing in the record indicates that the State was engaged in some kind of nefarious undertaking to elicit prejudicial testimony against Enlow. In the absence of such proof, we decline to find any improper motive on the part of the State.
¶ 19. Moreover, we fail to see the bad-act evidence in Smith’s testimony. While she testified that the police might have a vendetta against Enlow because he might be a suspect in the murder of a police officer, that is not the same thing as saying that Enlow was in fact a suspect or that Enlow had committed the act.
¶ 20. The State’s questions regarding Enlow’s use of or involvement with drugs is a different matter. We can discern no reason why this line of questioning should have been pursued. At the same time we do not believe, given the strong case against Enlow, that the questions asked him by the State regarding his use of or involvement with drugs caused him to be denied a fair trial. Nor do we believe that *1117 the results would have been different in the absence of the questions. After all, Enlow denied categorically the questions asked, and the State did not offer any evidence rebutting Enlow denials. Consequently, we find no merit in this claimed error.

3. Sufficiency of the Evidence

¶21. In issues two, three, and four, Enlow asserts that the trial court erred because it failed to grant his motion to dismiss and for a directed verdict since the jury’s verdict was not supported by sufficient evidence. Because issues two, three, and four challenge the sufficiency of the evidence, “[an appellate court] properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled [the] motion for JNOV.” Stack v. State, 860 So.2d 687, 699(¶ 27) (Miss.2003) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)).
¶ 22. The standard of review for denials of motions for directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same. Shelton v. State, 853 So.2d 1171, 1183(¶ 48) (Miss.2003). A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial. Id. “The credible evidence consistent with [the defendant’s] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence ... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.” Stack, 860 So.2d at 699(¶ 27) (citations omitted).
¶ 23. The elements of simple assault on a law enforcement officer are: (1) an attempt to cause or purposely, knowingly or recklessly cause bodily injury; (2) to a law enforcement officer; and (3) who is acting in the scope of his duty, office, or employment. Miss.Code Ann. § 97-3-7(1) (Supp. 2003).
¶ 24. Enlow does not argue that the State failed to prove the elements of the crime; rather, he points out that there was no medical proof of Officer Heard’s injury. However, we do not find it necessary for the State to present medical proof of Heard’s injury where the State is only required to prove beyond a reasonable doubt that Enlow attempted to cause or purposely, knowingly or recklessly caused bodily injury to Officer Heard.
¶25. Moreover, the evidence substantially supports Enlow’s guilt. Enlow does not dispute that Officer Heard was a law enforcement officer who was acting in the scope of his duty on the night of the incident. Officer Heard testified that En-low struck him behind the head with En-low’s fist, while his back was turned to Enlow. Officer Heard testified that he sustained a cut from Enlow’s blow. Shaneka Shumpert, an employee of Uncle Joe’s at the time of the incident, testified that she saw Enlow hit Officer Heard toward the back of the neck with his fist or hand after the officer ordered Enlow to stand back from the women Enlow was pursuing. James Neal and Billy Willis, both prosecution witnesses who witnessed the incident, testified that Enlow hit Officer Heard in the back of the head with his fist after the officer attempted to hold Enlow back from the women. Both testified further that Enlow’s attack was unprovoked.
¶ 26. Enlow, however, testified that he did not strike Officer Heard, but that instead Officer Heard hit him after he had *1118 turned around to leave the scene. Debbie Smith testified that Enlow did not strike Officer Heard. She further explained that the officer stuck Enlow with his ticket book and brought Enlow to his knees before he was arrested. Harold Neal, a defense witness, testified that Enlow did not hit the officer and that Officer Heard tapped Enlow with something in his hand. He later explained that he could not say that the witnesses for the State were liars, that their testimony as to Enlow hitting Officer Heard was possible, but stated that he did not see the events that way.
¶ 27. When evidence is in conflict, the jury is the sole judge of both the credibility of witnesses and the weight of their testimony. Weathersby Chevrolet Co. v. Redd Pest Control Co., 778 So.2d 130, 133(1110) (Miss.2001). The jury found that the evidence supported Enlow’s guilt of simple assault of a police officer. We find no basis to disturb the jury’s finding. There was much evidence to support the jury’s verdict.
¶ 28. Enlow also points out that Officer Heard gave conflicting testimony concerning where he was struck by Enlow and that Heard added the testimony that En-low attempted to gain access to Heard’s gun. We do not find this to be consequential to the jury’s verdict as, “[i]t is the jury’s province to resolve such conflicts, and the jury is free to accept the testimony of some witnesses and reject that of others, in whole or in part.” Montana v. State, 822 So.2d 954, 966(¶ 51) (Miss.2002).

4-. Polling of the Jury

¶ 29. Enlow argues that the circuit court failed to adequately poll the jury. However, a closer reading of his argument indicates that his objection is really based upon the way the court reporter recorded the results of the jury polling when she noted in the record: “(All jurors answered verbally in the affirmative.)” According to Enlow, this method of recording by the court reporter was not sufficient to satisfy the rules and consequently causes the results from the polling of the jury to be clouded.
¶ 30. Enlow requested a poll of the jury, and the circuit court readily granted his request. The court instructed the jurors to stand and for each of them to individually indicate whether the verdict as read was his or her verdict. The court reporter then recorded in the transcript as follows: “(All jurors answered verbally in the affirmative.)” The court inquired of Enlow whether he was satisfied with the polling of the jury, and he answered in the affirmative. Thereafter, the court dismissed the jury.
¶ 31. Rule 3.10 of the Uniform Circuit and County Court Rules states, in part:
The court shall inquire if either party desires to poll the jury, or the court may on its own motion poll the jury ... If the court, on its own motion, or on motion of either party, polls the jury, each juror shall be asked by the court if the verdict rendered is that juror’s verdict. In a criminal case where the verdict is unanimous and in a civil case where the required number of jurors have voted in the affirmative for the verdict, the court shall order the verdict filed and entered of record and discharge the jury unless a bifurcated hearing is necessary.
Rule 3.10 does not address the method of recording the results of jury polling but states only the procedure for accomplishing that task. Here, the circuit court adhered to that procedure. Moreover, we note that Enlow failed to object to the method of polling, and in fact expressed his satisfaction with its results. We find no merit in this issue.

5. Cumulative Effect of Errors

*1119 ¶ 32. Finally, Enlow argues that the cumulative effect of errors by the circuit court demonstrate that he was not afforded a fair trial. As can be ascertained from our discussion of the issues addressed earlier in this opinion, this issue has no merit inasmuch as we have found no merit in any of the issues previously discussed.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF CONVICTION OF SIMPLE ASSAULT ON A POLICE OFFICER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.