# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-00163-SCT

*CARL ALTON BRADY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2021 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | JOHN ANTHONY PIAZZA |
| | ANTHONY J. BUCKLEY |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/21/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Carl Alton Brady appeals his convictions of attempted willful trespass and two counts

of burglary of an automobile.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the night of October 28, 2019, Brady had been at a friend's house and was on his

way to look at a pond under construction.  As he approached the pond, his truck got stuck in

the mud.  Brady tried to use a ratchet strap to pull the truck out, but the strap lacked adequate

length. Brady walked back to his friend's house but was unable to locate anyone at home. As a result, Brady "decided [to] walk to the neighbors, which would be [Robert] Burdette and his wife." Brady rang the Burdettes' doorbell several times, but no one came to the door.

¶3. Robert was asleep and awoke to the doorbell. As Robert walked to the front of the house, he heard his daughter's bedroom window "being rattled." When Robert opened the front door, he saw Brady "at [his daughter's] window" with "his hands . . . on the window." Robert also saw "that [Brady] had put on the ground some stuff that came out of one of [Robert's] vehicles," specifically, a flashlight and a key. When he turned around, Robert noticed that "all [of the] doors on [his] [Ford] Explorer were opened, and that the back hatch was opened up." Robert called 911.

¶4. Sergeant Brennon Chancellor responded to the scene where he observed two vehicles in the driveway, a Ford Explorer and a Dodge Durango. The doors and rear hatch of the Ford Explorer were opened. Sergeant Chancellor asked Brady why he was there and if he knew Robert. Brady responded that he was "following a trail . . . that led him to that residence."

¶5. Brady was arrested and taken into custody. Sergeant Chancellor conducted a search incident to arrest. Several items were found on Brady including a knife, two sets of keys, and a bottle opener. According to Robert, those items belonged to him and had been inside his Dodge Durango. Additionally, other items belonging to Robert including "some of [his] toolboxes were out of [his] truck, and there were some clothes hanging out of the door that were in the Explorer." Moreover, some grill grates inside Robert's barbeque grill located on the side of the house had been removed and were "stacked up," and a bucket of metal

2

working scraps had been "dumped out."

¶6. Brady was indicted on two counts of burglary of an automobile (Count I and Count II) and one count of attempted burglary of a dwelling (Count III). Before trial, Brady moved to quash Count III of the indictment for its failure to allege an overt act. The trial court denied the motion.

¶7. Brady was convicted of both counts of burglary of an automobile and the lesser-included offense of attempted willful trespass. For each count of burglary of an automobile, Brady was sentenced to serve seven years in the custody of the Mississippi Department of Corrections, with two years suspended pending the successful completion of two years of post-release supervision. For the attempted willful trespass conviction, Brady was sentenced to serve six months in the full-time custody of the Jones County Adult Detention Center. Brady was ordered to "successfully complete the Long-Term Therapeutic Alcohol and Drug Treatment . . . [w]hile in the full-time custody of the Mississippi Department of Corrections."

¶8. Brady moved for judgment notwithstanding the verdict or, alternatively, a new trial or resentencing. The trial court denied the motion. Brady timely appealed. On appeal, Brady argues (1) the trial court erred by failing to quash Count III of the indictment, (2) the trial court erred by failing to sua sponte preclude evidence of other bad acts not related to the indicted charges, and (3) the trial court erred by refusing proposed jury instruction D-11.

## DISCUSSION

I. *Whether the trial court erred by failing to quash Count III of the indictment.*

¶9. Brady first argues the trial court erroneously denied his pretrial motion to quash Count

3

III of the indictment. He asserts the indictment is defective because the charge for attempted burglary of a dwelling failed to allege an overt act. He claims that because the indictment did not allege a specific overt act committed to further the crime, this Court should reverse and render his conviction of attempted willful trespass.

¶10. "[W]hether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review . . . ." *Forkner v. State*, 277 So. 3d 946, 948-49 (Miss. 2019) (alterations in original) (internal quotation marks omitted) (quoting *Colburn v. State*, 201 So. 3d 462, 469 (Miss. 2016)).

¶11. Under Mississippi Rule of Criminal Procedure 14.1(a)(1), an indictment "shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." An indictment for an attempt crime must charge "(1) the intent to commit the offense, and (2) an overt act toward its commission." *Maxie v. State*, 330 So. 2d 277, 277 (Miss. 1976) (citing *Ford v. State*, 218 So. 2d 731, 732 (Miss. 1969)). "It is the law of this State that 'the intent to commit a crime plus any slight act toward its consummation is sufficient in law to constitute the commission of an attempted crime.'" *Hawkins v. State*, 11 So. 3d 123, 126-27 (Miss. Ct. App. 2008) (quoting *Ford*, 218 So. 2d at 732).

¶12. Count III of Brady's indictment alleged:

**Attempted Burglary of a Dwelling**

as part of a common plan or scheme or as part of the same transaction or occurrence in said County, District and State, on or about the 29th day of October, 2019, did willfully, unlawfully, and feloniously, attempt to break into and enter a bedroom window of a dwelling house belonging to Robert and

4

Cherie Burdette, located at 330 Service Road, Laurel, MS, only prevented from doing so by being caught by the homeowners, wherein valuable things were kept for use, with the intent to commit the crime of Larceny therein; and in violation of Section 97-17-33 and 97-17-23, Mississippi Code of 1972, and contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.

¶13. Brady asserts, "the mere addition of the word 'window' to the legal term of art 'break and enter' is not a proper locution of an overt act. It is merely a location, a noun. Not an act which would be a verb." As a result, he argues Count III of his indictment fails to allege an overt act toward the commission of the offense and is defective. In support, Brady relies on *Durr v. State*, 446 So. 2d 1016 (Miss. 1984).

¶14. In *Durr*, the defendant was indicted on the charge of attempted burglary. *Id.* at 1017. The indictment alleged that the defendant did "unlawfully . . . and burglariously attempt to break and enter the dwelling . . . ." *Id.* (first alteration in original). The Court found that the State had failed to allege "an overt act toward the commission of the offense charged." *Id.* The Court concluded that "[b]ecause an essential ingredient of the offense [wa]s missing from the indictment, it failed to charge a crime and [wa]s void." *Id.* But *Durr* is distinguishable.

¶15. Unlike in *Durr*, Brady's indictment does not simply allege that Brady attempted to break and enter "the dwelling." *Id.* Instead, Brady's indictment makes clear that Brady attempted to break and enter the dwelling by "attempt[ing] to break into and enter a bedroom window of [the] dwelling."

¶16. In *Hawkins*, the defendant was convicted of attempted burglary of an automobile. *Hawkins*, 11 So. 3d at 124. The indictment charged that the defendant "did then and there,

5

unlawfully, willfully, feloniously and burglariously attempt to break and enter a certain automobile . . . by breaking out a window . . . ." *Id.* at 126 (emphasis omitted). The Court of Appeals found the indictment was sufficient stating, "[a]s clearly evidenced by the indictment, [the defendant] was on notice that he was being indicted for attempting to break into an automobile by 'breaking out a window.'" *Id.* The court concluded "that the indictment was sufficient to put [the defendant] on notice that he was being charged with attempted burglary, and that the indictment specifically set forth the conduct that constituted the attempt." *Id.* This Court denied certiorari. *Hawkins v. State*, 12 So. 3d 531 (Miss. 2009) (table).

¶17.    Here, the indictment notified Brady that he was being charged with "attempted burglary of a dwelling" by "attempt[ing] to break . . . and enter a bedroom window of [the] dwelling . . . ." Attempting to break and enter a bedroom window of the dwelling is an overt act in furtherance of the offense. Stated differently, Brady's attempt to break and enter a bedroom window is an overt act in furtherance of attempted burglary of a dwelling. As in *Hawkins*, Brady's indictment sufficiently put Brady on notice of the charges against him, and it sufficiently "set forth the conduct that constituted the attempt." *Hawkins*, 11 So. 3d at 126.

¶18.    The dissent asserts that like the indictment in *Maxie v. State*, 330 So. 2d 277 (Miss. 1976), the indictment here fails to allege "an overt act in furtherance of the attempted felony." Diss. Op. ¶ 51. In *Maxie*, the indictment alleged that the defendant did "unlawfully, wilfully, feloniously and forcibly attempt to rape and ravish . . . , a female above the age of twelve years, without the consent and against the will of . . . [the victim]." *Maxie*, 330 So.

6

2d at 277 (second alteration in original). We agree with the dissent that the indictment in *Maxie* does not allege an overt act. Indeed, the indictment did not set forth the conduct that constituted the attempt. In other words, the indictment did not explain how the defendant attempted to rape and ravish the victim. But here, unlike in *Maxie*, the indictment set forth the conduct that constitutes the attempt. The indictment explained how Brady attempted to burglarize the dwelling, i.e., by "attempt[ing] to break . . . and enter a bedroom window of [the] dwelling . . . ." And as previously noted, attempting to break and enter a window of the dwelling is an overt act of burglary of a dwelling. Thus, unlike in *Maxie*, Brady's indictment sufficiently alleged an overt act.

¶19. The dissent further asserts that our reliance on *Hawkins* is misplaced since "the *Hawkins* indictment first alleged the elements of the attempted crime, *i.e.*, that Hawkins 'did . . . attempt to break and enter a certain automobile,' then separately alleged the overt act of breaking out a window." Diss. Op. ¶ 52 (alteration in original) (quoting *Hawkins*, 11 So. 3d at 126). According to the dissent, "[t]he difference between the sufficient *Hawkins* indictment on the one hand and the insufficient indictments of today's case, *Maxie*, and *Durr* on the other is structural and obvious." Diss. Op. ¶ 52.

¶20. But the dissent's position in essence requires us to prove attempt within attempt. Brady was charged with attempted burglary of a dwelling by attempting to break and enter a bedroom window. According to the dissent, the indictment must set forth not only the conduct that constitutes attempted burglary of the dwelling but also that conduct that constitutes the attempted breaking and entering of the window. This is simply not required

7

by law.

¶21.    In *Hawkins*, the indictment sufficiently put the defendant on notice "that he was being indicted for attempting to break into an automobile by 'breaking out a window.'" *Hawkins*, 11 So. 3d at 126.  Here, the record reflects that Brady, in his attempt to break into the dwelling, did not break the bedroom window.  Instead, according to the indictment, Brady attempted to break the window.  But the indictment does not have to allege how Brady attempted to break into and enter *the window*, only that he took some step toward breaking and entering *the dwelling*.  *Maxie*, 330 So. 2d at 277 (citing *Ford*, 218 So. 2d at 732); *Hawkins*, 11 So. 3d at 126-27 (quoting *Ford*, 218 So. 2d at 732).  The indictment sufficiently sets forth the steps or conduct Brady took in his attempt to break and enter the dwelling, i.e., by attempting to break the bedroom window.  Accordingly, the indictment sufficiently alleges an overt act committed to further the crime.

¶22.    The dissent, relying on *State v. Lindsey*, 202 Miss. 896, 32 So. 2d 876 (1947), asserts,

> If the indictment in *Lindsey* failed to allege a sufficient overt act when it contained specific allegations of stalking and exhausting the alleged victim that follow the allegations of the elements of the attempted offense, then it would seem certain the use of the word 'window' in the allegation of the elements of the attempted offense in today's case without *any additional alleged overt act* fails as well.

Diss. Op. ¶ 55 (emphasis added).  But again, it is not required that the indictment set forth the conduct that constitutes attempted burglary of the dwelling *and* the conduct that constitutes attempted breaking and entering of the window.  In other words, it is unnecessary for the indictment to include an "additional alleged overt act[.]"  Diss. Op. ¶ 55.  Here, the indictment clearly sets forth that Brady is being indicted for "attempted burglary of a

8

dwelling" by "attempt[ing] to break into and enter a bedroom window of [the] dwelling house." No further alleged overt act is required.

¶23. We find the indictment alleges the essential facts and elements constituting the charged offense, and it sufficiently notifies Brady of the nature and cause of the accusation against him. MRCrP 14.1(a)(1). Accordingly, the indictment is not defective, and the trial court did not err by failing to quash Count III of the indictment.

>    II.    *Whether the trial court erred by failing to sua sponte preclude*
>           *evidence of other bad acts not related to the indicted charges.*

¶24. After his arrest, Brady was transported to the sheriff's department where he waived his *Miranda*[1] rights and was interviewed by Investigator JD Carter. During the recorded interview, Brady admitted that he had a history of methamphetamine use. A DVD of the interview was admitted into evidence at trial with no objection and was played for the jury.

¶25. Additionally, at trial, Brady testified that at the time of the offenses, he had a lot going on in his head. He explained that "the Bible says God gives people visions sometimes, and [he] believe[d] God gave [him] a vision of a dirty world." During Brady's cross-examination, the State suggested that "what was going on in [Brady's] head was not God but methamphetamine." No objection was made by defense counsel.

¶26. Brady argues the trial court erred by "failing to sua sponte preclude evidence of other bad acts not related to the indicted charges." He asserts,

> the introduction of [his] use of methamphetamine was unrelated to the crime, and was only used to mock and discredit him. It is clear that the injection of [his] methamphetamine use was irrelevant and more prejudicial than probative

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of guilt. . . . As the injection of meth use was improper and inflammatory, even though [trial] counsel did not object, the trial court should have acted sua sponte to preserve the integrity of the trial.

Brady claims that allowing the evidence was plain error. We disagree.

¶27. It is undisputed that Brady's trial counsel did not object to the admission of the DVD or to the State's cross-examination regarding Brady's methamphetamine use. "The failure to object to testimony at trial 'waives any assignment of error on appeal.'" *Ross v. State*, 16 So. 3d 47, 57 (Miss. Ct. App. 2009) (quoting *Johnson v. State*, 477 So. 2d 196, 214 (Miss. 1985)). "[I]ssues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived." *Goff v. State*, 14 So. 3d 625, 655 (Miss. 2009) (internal quotation marks omitted) (quoting *Wells v. State*, 903 So. 2d 739, 742 (Miss. 2005)). Accordingly, Brady waived this alleged error on appeal unless he can show that the trial court's failure to sua sponte preclude evidence of other bad acts amounted to plain error.

¶28. The plain error standard is allowed "'only in unusual circumstances' to 'prevent[] a manifest miscarriage of justice.'" *Demorst v. State*, 228 So. 3d 323, 328 (Miss. Ct. App. 2017) (alteration in original) (quoting *Goff*, 14 So. 3d at 655). "[A]ppellate courts will only find plain error in cases where 'a defendant's substantive or fundamental rights are affected.'" *Id.* (quoting *Willie v. State*, 204 So. 3d 1268, 1279 (Miss. 2016)). "More precisely, the appellant must show that the trial court deviated from a legal rule, that the error is plain, clear, or obvious, and that the error prejudiced the outcome of the trial." *Id.* (citing *Willie*, 204 So. 3d at 1279).

¶29. "[N]o legal rule requires a trial judge to sua sponte stop or strike arguably

10

objectionable testimony . . . ." ***Lawson v. State***, 292 So. 3d 266, 277 (Miss. Ct. App. 2019); *see also* ***Demorst***, 228 So. 3d at 328 ("[W]e are aware of no legal rule requiring a trial court to sua sponte suppress evidence."). Indeed, "whether to object to such testimony remains a trial-strategy matter left to defense counsel's discretion." ***Lawson***, 292 So. 3d at 277.

¶30. Additionally, the record reflects that the alleged error did not prejudice the outcome of the trial. In ***Enlow v. State***, the State questioned a defendant charged with simple assault of a police officer about his use of or involvement with drugs. ***Enlow v. State***, 878 So. 2d 1111, 1116 (Miss. Ct. App. 2004), *cert. denied*, 888 So. 2d 1177 (Miss. 2004). The defendant appealed and argued "that the circuit court erred in allowing the State to make prejudicial reference to prior bad acts[.]" ***Id.*** The appellate court noted that it could "discern no reason why this line of questioning should have been pursued" but stated,

> we do not believe, given the strong case against Enlow, that the questions asked by the State regarding his use of or involvement with drugs caused him to be denied a fair trial. Nor do we believe that the results would have been different in the absence of the questions.

***Id.*** at 1116-17.

¶31. Here, as in ***Enlow***, given the strong case against Brady, the results would not have been different in the absence of the challenged evidence.

¶32. Robert testified that on the night in question, he heard someone rattling his daughter's bedroom window. When he opened the front door, Robert saw Brady "at [his daughter's] window" with "his hands . . . on the window." Robert further testified regarding the various items found on and around Brady, and he explained that those items had come from inside his vehicles. Robert advised the jury that he did not know Brady or give Brady permission

11

to enter his vehicles.

¶33. Brady testified in his own defense. Brady denied that he touched the bedroom window, but he admitted that he entered and took items from the vehicles. He testified that he took a knife from the Ford Explorer, allegedly believing it was his. Brady also admitted that he intended to search a third vehicle located on Robert's property with the keys he took from the Ford Explorer. Brady acknowledged that his actions constituted a "bad decision."

¶34. Given the strong case against Brady, the trial court's alleged error of failing to sua sponte preclude evidence of other bad acts did not prejudice the outcome of the trial. *Demorst*, 228 So. 3d at 328.

¶35. Alternatively, Brady argues his trial counsel's failure to object constitutes ineffective assistance of counsel. Specifically, Brady claims, "if not the court, then it was incumbent on trial counsel to have objected. Failure to have done so . . . was ineffective assistance of counsel."

¶36. Every criminal defendant has a state and federal constitutional right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26. To prove ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. But a strong presumption exists that counsel's performance constituted trial strategy and was "within the wide range of reasonable

12

professional assistance[.]" *Id.* at 689.  Prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶37.   Ordinarily, claims of ineffective assistance of counsel are not addressed on direct appeal.  *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003).  Under Mississippi Rule of Appellate Procedure 22(b), "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record."  Additionally, this Court has explained:

> It is unusual for this [C]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal.  This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim. . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief.  This Court will rule on the merits on the rare occasions where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge."

*Wilcher*, 863 So. 2d at 825 (citations omitted) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (Miss. Ct. App. 2002)).

¶38.   Here, the record does not affirmatively show ineffectiveness of constitutional dimensions nor have the parties stipulated that the record is adequate to allow this Court to make the finding without consideration of the findings of the trial judge. Moreover, the issue of whether Brady's counsel was ineffective by failing to make certain objections is not fully apparent from the record.  Because Brady did not challenge the admission of the evidence,

13

the record was not developed.

¶39. "Complaints concerning counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy." *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995) (citing *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984)). Claims based on defense counsel's trial strategy and tactics require a consideration of facts beyond the contents and face of the record. *Bishop v. State*, 282 So. 3d 633, 644 (Miss. Ct. App. 2019). Because the record is insufficient to evaluate Brady's ineffective-assistance-of-counsel claim, his claim is denied, preserving his right to raise the issue in a petition for post-conviction relief.

> III.     Whether the trial court erred by refusing Brady's proposed instruction that expounded upon the defense theory of the case.

¶40. Brady was indicted on the charges of burglary of an automobile and attempted burglary of a dwelling "with the intent to commit the crime of larceny therein." At trial, Brady proposed jury instruction D-11, which states:

> The taking of property with the intention of using it temporarily and with no intention of depriving its owner permanently is not larceny.

As the trial court noted, instruction D-11 "is a definition of what larceny is not." The trial court found that the law was adequately stated in other instructions and refused the instruction.

¶41. Brady last argues the trial court erroneously refused the instruction because it "expounded upon [his] theory of the case." Brady's "theory of defense" was that "he lacked intent to deprive the Burdettes of anything permanently[;] [i]nstead[,] he was looking for

14

something useful to get his vehicle unstuck." He claims that "[t]he instruction was a necessity" because "[i]t is critical to instruct the jury on its duty to acquit if it believed the defense theory of the case." We disagree.

¶42. The grant or denial of a jury instruction is reviewed for an abuse of discretion. *Heisser v. State*, 213 So. 3d 544, 546 (Miss. Ct. App. 2016). "Jury instructions are reviewed as a whole to determine if any error occurred." *Id.* (citing *Sheriff v. State*, 156 So. 3d 924, 925 (Miss. Ct. App. 2014)). "If the instructions fairly state the law of the case and no injustice is created, no reversible error will be found." *Id.* (internal quotation marks omitted) (quoting *Sheriff*, 156 So. 3d at 925).

¶43. The trial court properly found that larceny was adequately covered in the other jury instructions. Indeed, the jury was instructed on larceny not once but three separate times. The trial court granted jury instructions S3-A, D-5, and D-7A[2], each of which instructed the jury that in order to find Brady guilty of the charged offense, it must find beyond a reasonable doubt that Brady acted with the felonious intent to commit larceny and thereby permanently deprive Robert and Cherie Burdette of their property and convert it to his use. Moreover, each instruction instructed the jury that if the prosecution failed to prove any one or more of the elements beyond a reasonable doubt, then it "shall" find Brady not guilty of the charged offense. Because Brady's requested instruction was adequately covered in other instructions, the trial court did not err by refusing instruction D-11.

_____

[2] Jury instruction S-3A instructed the jury on Count III, attempted burglary of a dwelling. Jury instruction D-5 instructed the jury on Count I, burglary of an automobile. Jury instruction D-7A instructed the jury on Count II, burglary of an automobile.

15

¶44.    Additionally, despite the multiple jury instructions regarding larceny, the jury was not required to be instructed on the elements of larceny. "A jury instruction defining felonious intent as the intent to deprive the victim permanently of his or her property is necessary only when there is an issue as to whether the defendant had the intent to permanently deprive the victim of his or her property." *Wales v. State*, 73 So. 3d 1113, 1124-25 (Miss. 2011). Brady was not charged with larceny; thus the State was not required to prove an intent to permanently deprive the victims of their property. *Id.* Brady was charged with burglary and attempted burglary, the elements of which are "(1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Burford v. State*, 320 So. 3d 502, 515 (Miss. 2021) (internal quotation marks omitted) (quoting *Ward v. State*, 285 So. 3d 136, 140 (Miss. 2019)); *see also* Miss. Code Ann. §§ 97-17-23, -33 (Rev. 2020). This Court has explained that the second element should not be mistaken for a separate, underlying, or subcrime of burglary. *Windless v. State*, 185 So. 3d 956, 961 (Miss. 2015). The defendant is "on trial for burglary, not [the intended crime]." *White v. State*, 195 So. 3d 765, 768 (Miss. 2016). And "the elements of the intended crime are not elements of burglary." *Quinn v. State*, 191 So. 3d 1227, 1233 (Miss. 2016) (emphasis omitted). Thus, "only the intent to commit some crime need be proven in order to establish the second element of burglary—the State need not also prove the elements of that intended crime." *Id.* (emphasis omitted). Because larceny was the intended crime of burglary, the jury was not required to be instructed on its elements. *Id.*

¶45.    The record reflects the jury instructions, when reviewed as a whole, fairly state the

16

law, and no injustice was created. *Heisser*, 213 So. 3d at 546. Accordingly, the trial court did not abuse its discretion by refusing Brady's proposed jury instruction D-11.

## CONCLUSION

¶46. Brady's convictions and sentences are affirmed. Brady's ineffective-assistance-of-counsel claim is denied, preserving his right to argue the issue later in a petition for post-conviction relief.

¶47. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**COLEMAN, JUSTICE, DISSENTING:**

¶48. The indictment charging Carl Brady with attempted breaking and entering contains no separate allegation of an overt act done in furtherance of his attempt. As such, it falls far short of charging him with the crime of attempt as the crime is delineated in Mississippi Code Section 97-1-7.

¶49. In *Maxie v. State*, 330 So. 2d 277, 277 (Miss. 1976), the indictment at issue charged the defendant with attempted rape. There, the indictment charged that the defendant, Maxie, "(D)id unlawfully, wilfully, feloniously and forcibly attempt to rape and ravish . . . , a female above the age of twelve years, without the consent and against the will of . . . [the victim.]" *Id.* (first, second, and third alterations in original). The *Maxie* Court's discussion en route to reversing Maxie's conviction was short (four paragraphs) and unanimous:

> As we held in *Ford v. State*, 218 So. 2d 731 (Miss. 1969) indictments under this statute (which has been substantially unchanged since Hutchinson's Code

17

of 1848) must set forth two elements: (1) the intent to commit the offense, and (2) an overt act toward its commission. While *Ford* was not an attempted rape case, it was drawn under what is now section 97-1-7, *supra*. *Hawkins v. State*, 222 Miss. 753, 77 So. 2d 263 (1955), an attempted rape case, held that such an indictment must allege "an attempt . . . coupled with an act toward it."

*State v. Lindsey*, 202 Miss. 896, 32 So. 2d 876 (1947), held that an indictment for attempted rape was insufficient though it alleged as an overt act that the defendant made the attempt "by stalking, chasing and running after" the victim. Such language was adjudged faulty because it could have been just as descriptive of an attempt to commit "murder, assault and battery, robbery or rape."

Clearly the skimpy language of the present indictment rendered it so faulty as to be not curable by amendment, and it could not have properly withstood a demurrer at the trial level. However, the State (citing no authority) says the appellant has waived any error as to the sufficiency of the indictment "by failing to demur" to it. The correct rule is that if an indictment does not allege an essential ingredient of the crime charged, as is true here, such a defect is not waived by failure to demur. *Watson v. State*, 291 So. 2d 741 (Miss.1974); *Meyer(s) v. State*, 193 So. 2d 728 (Miss. 1967); *Langford v. State*, 239 Miss. 483, 123 So. 2d 614 (1960).

As stated by Gillespie, P.J., in *Meyer(s)*, unless we overrule the cited cases, "the present case must be reversed." *See Harris v. State*, 329 So. 2d 525 (Miss., handed down April 6, 1976), where in a contrasting case we upheld an indictment which properly charged the overt act in an attempted robbery case. Fairness requires that this case be reversed so that appellant may be tried upon a valid indictment.

*Maxie*, 330 So. 2d at 277-78 (alterations in original). Regarding the above-quoted passage from *Maxie*, the first thing I note is that so important was the allegation of an overt act to the rights secured to the defendant by the constitutional requirement of an indictment that it could not be waived by the failure to raise it. *Id.* Second, the Mississippi Supreme Court has not overruled the line of cases that acknowledge the requirement of alleging an overt act in indictments charging attempt pursuant to Mississippi's general attempt statute.

18

¶50. It should be no surprise that an allegation of an overt act is required, as it is an element of the crime as defined by the attempt statute.

> Every person who shall design and endeavor to commit an offense, *and shall do any overt act toward the commission thereof*, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.

Miss. Code Ann. § 97-1-7(1) (Rev. 2020) (emphasis added). Accordingly, the courts have no authority to remove the requirement that an overt act be charged and proved anyway. *Sinclair v. State*, 161 Miss. 142, 132 So. 581, 592 (1931) ("The Legislature has full power to declare and define crime . . . .").

¶51. In the case *sub judice*, the indictment alleged that Brady "did willfully, unlawfully, and feloniously, attempt to break into and enter a bedroom window of a dwelling house . . . ." Again, the *Maxie* indictment charged that Maxie "(D)id unlawfully, wilfully, feloniously and forcibly attempt to rape and ravish . . . , a female above the age of twelve years, without the consent and against the will of . . . [the victim.]" *Maxie*, 330 So. 2d at 277 (first, second, and third alterations in original). Neither the indictment in *Maxie* nor the indictment here allege an overt act in furtherance of the attempted felony. The presence of the word "window" does nothing to add an allegation of an overt act. Both charging sentences have an allegation—of breaking and entering here and rape in *Maxie*—with an object—a window here and an underage female in *Maxie*. There is no more of an allegation of an overt act committed in furtherance of the breaking and entering of the window here than there is an allegation of an

19

overt act done in furtherance of rape in *Maxie*.

¶52.  The majority nevertheless distinguishes the language of the indictment against Brady based on the presence of the word "window" as the object in the language of the indictment that charges the underlying crime of breaking and entering, thereby attempting to convince its reader that the single allegation can be considered to repeat itself for multiple purposes even though, as a matter of a plain reading of the text of the indictment, it does not.  The Mississippi Court of Appeals case of *Hawkins v. State*, 11 So. 3d 123 (Miss. Ct. App. 2008) (emphasis omitted), relied upon by the majority to show that the Court of Appeals there considered the addition of the words "by breaking out a window" to suffice as an allegation of an overt act works against the majority's result here.  Unlike the indictment in the instant case, *Maxie*, or *Durr v. State*, 446 So. 2d 1016 (Miss. 1984), discussed by the majority and upon which Brady relies, the *Hawkins* indictment first alleged the elements of the attempted crime, *i.e.*, that Hawkins "did . . . attempt to break and enter a certain automobile," then separately alleged the overt act of breaking out a window.  The difference between the sufficient *Hawkins* indictment on the one hand and the insufficient indictments of today's case, *Maxie*, and *Durr* on the other is structural and obvious.

¶53.  Indeed, the cases in which the sufficiency of an indictment charging attempt has been raised but the reviewing court found the indictment to be sufficient all involve indictments with clearly separate allegations of overt acts.  In *Harris v. State*, 329 So. 2d 525 (Miss. 1976), the indictment alleged the following overt act: "entry into the store, physically grabbing Mrs. R. T. Pigg and forcing her toward the cash register, and desisting and fleeing

20

on learning that Mrs. R. T. Pigg had activated an alarm." *Id.* at 526. In *Harden v. State*, 465

So. 2d 321, 323-24 (Miss. 1985), the indictment alleged that Harden committed the overt act

"by attacking the said Janice Griffin and by making lewd suggestions to her regarding sexual

intercourse with her and further by violently making an assault upon said Janice Griffin . . . ."

The indictment in *Hawkins* alleged:

> The indictment, omitting the formal parts, is as follows: ". . . did unlawfully and designedly, with actual violence, make an assault upon the body of one Mrs. Elizabeth Louise Jones, a female, and the said Joseph Hawkins therein *did then and there lay hold of the body of the said Mrs. Elizabeth Louise Jones upon the bed of the said Mrs. Elizabeth Louise Jones, then and there situate*, with the felonious intent, design and endeavor, her, the said Mrs. Elizabeth Louis Jones, violently, knowingly, forcibly and against her will feloniously to ravish and carnally know.'

*Hawkins*, 77 So. 2d at 263-64. In short, I have not found, and the majority has not identified,

any case in which an indictment so lacking in separate allegations of overt acts as the one

here was held by the Mississippi Supreme Court to suffice.

¶54.     In *State v. Lindsey*, 202 Miss. 896, 32 So. 2d 876, 876-77 (1947), the indictment

alleged as follows:

> Omitting the formal parts, the indictment charged that the defendant there, appellee here, "did then and there wilfully, unlawfully, feloniously, and forcibly design, endeavor and attempt to commit the crime of rape upon the person of Mrs. Marie Howell, a female, and did further such design, endeavor and attempt to commit said offense by stalking, chasing and running after the said Mrs. Marie Howell, to the extent of almost exhausting her, in a lonesome and secluded place in the country where no one else was present, with intent of the said L. C. Lindsey to wilfully, unlawfully, feloniously and forcibly to rape, ravish and carnally know the said Mrs. Marie Howell, which said offense he was prevented from committing by her reaching an acquaintance from whom she received help and protection, except for which help and protection the said L. C. Lindsey would wilfully, unlawfully, feloniously and forcibly have committed said offense of rape upon the person of the said Mrs. Marie

21

Howell."

¶55.   The above-quoted indictment alleges the elements of the attempted offense of rape. It then continues to allege several successive acts committed in furtherance of it.  Yet, without a dissent, the Mississippi Supreme Court held it to be insufficient.  *Id.* at 878.  The *Lindsey* Court reasoned that the acts alleged to have been committed in furtherance of the crime of attempted rape did not "exclusively relate to rape[, were] not solely germane to or cognate with rape alone, and hence, in the instant case, [were] too remote as an element of rape. "  *Id.* at 877.  If the indictment in *Lindsey* failed to allege a sufficient overt act when it contained specific allegations of stalking and exhausting the alleged victim that followed the allegations of the elements of the attempted offense, then it would seem certain the use of the word "window" in the allegation of the elements of the attempted offense in today's case without any additional alleged overt act fails as well.

¶56.   In short, in order to suffice, an indictment charging attempt must allege an overt act "manifestly adapted to effectuate the offense . . . ."  *Harris*, 329 So. 2d at 526.  The indictment against Brady fails to allege an overt act done in furtherance of his attempted breaking and entering of a dwelling.  Accordingly, and with respect, I dissent.